IN the INTEREST OF THOMAS F., a person under the age of 18:

STATE of Wisconsin, Petitioner-Respondent,†

v.

THOMAS F., Respondent-Appellant.

Court of Appeals

No. 95–0621. *Submitted on briefs July 10, 1995.—Decided August 3, 1995.*

(Also reported in 538 N.W.2d 568.)

†Petition to review denied.

261

For the respondent-appellant the cause was submitted on the briefs of *Sally A. McDonald* of *McDonald Law Office* of Stevens Point.

For the petitioner-respondent the cause was submitted on the brief of *Susan E. Alesia*, assistant state public defender, of Madison.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

EICH, C.J.   After Thomas F., age 10, accidentally shot and killed another child, he was adjudged to be in need of protection or services under § 48.13(12), STATS., which gives the juvenile court jurisdiction over children who commit "a delinquent act." He appeals, claiming that *In re Courtney E.*, 184 Wis. 2d 592, 516 N.W.2d 422 (1994), a case decided midway through the proceedings,[1] requires the State to allege and prove that the court is able to order services for him before he is adjudged in need of protection or services under the statute. He claims this was not done and seeks reversal of the trial court's order. We affirm.

The facts are not in dispute. Thomas took his father's gun from a gunbelt hanging in a bedroom closet and placed a bullet in one of the cylinders. Intending to frighten his friend, A.S., he pointed the gun and pulled the trigger three times, thinking that none of the three cylinders he was "firing" contained the bullet. When he pulled the trigger the third time the pistol discharged and A.S. was killed.

After the shooting, Thomas's parents removed all firearms from the house and retained a therapist, Lynne Oswald, to assist Thomas in dealing with the trauma resulting from the shooting. Oswald met with

---

[1] The "retroactivity" of *Courtney E.* is not raised as an issue on this appeal; both parties assume it is applicable.

Thomas twice a week for the first several weeks, eventually reducing the sessions to one every two weeks. She testified at the dispositional hearing that Thomas's parents cooperated with her and followed her suggestions, and that she believed they were motivated by a sincere desire to help Thomas through his ordeal.

Several weeks after the shooting, the State filed a petition alleging that Thomas was a child in need of protection or services (CHIPS) under § 48.13(12), STATS. Section 48.13 gives the juvenile court jurisdiction over children "alleged to be in need of protection or services which can be ordered by the court," and who fit one or more categories listed in eighteen succeeding subsections, including children who are orphaned, abandoned or abused or whose parents are institutionalized or otherwise unable to care for them. The category at issue in Thomas's case is specified in subsection (12), which gives the juvenile court jurisdiction over a child who, "being under 12 years of age, has committed a delinquent act . . . ."[2] A "delinquent" act is

---

[2] Section 48.13 provides:

The court has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and:

(1)   Who is without a parent . . .;

(2)   Who has been abandoned;

(3)   Who has been the victim of sexual or physical abuse . . .;

(3m)   Who is at substantial risk of becoming the victim of sexual or physical abuse . . .;

(4)   Whose parent . . . is unable to care for . . . the child . . .;

(5)   Who has been placed for care or adoption in violation of law;

(6)   Who is habitually truant from school . . .;

(6m)   Who is a school dropout . . .;

(7)   Who is habitually truant from home . . .;

one that "violate[s] any state or federal criminal law." Section 48.02(3m), STATS.

The State's petition sets forth at length the facts surrounding the fatal accident and alleges that Thomas is in need of protection and services under § 48.13(12), STATS., because the shooting was a delinquent act—an act that, if committed by someone over the age of eighteen, would constitute a felony: homicide by negligent handling of a dangerous weapon in violation of § 940.08, STATS. The petition did not list or state any specific services that the juvenile court could provide for Thomas.

Between the plea hearing and the fact-finding hearing, the supreme court decided *Courtney E.*, which concludes that CHIPS petitions[3] must "allege and con-

---

**(8)** Who is receiving inadequate care [while] a parent is missing, incarcerated . . . or institutionalized;

**(9)** Who . . . is in need of special care . . . which the parent . . . is unwilling to provide;

**(10)** Whose parent . . . seriously endanger[s] the [child's] physical health . . .;

**(10m)** Whose parent . . . is at substantial risk of . . . endanger[ing] seriously the [child's] physical health . . .;

**(11)** Who is suffering emotional damage for which the parent . . . is unwilling to provide treatment . . .;

**(11m)** Who is suffering from [a severe] alcohol and other drug abuse impairment . . .;

**(12)** Who, being under 12 years of age, has committed a delinquent act . . .;

**(13)** Who has not been immunized as required by [law]; or

**(14)** Who has been determined . . . to be not responsible for a delinquent act by reason of mental disease or defect . . . .

[3] The *Courtney E.* court uses the broad term "CHIPS petitions" at several places in its opinion. Elsewhere, however, it states quite plainly that its discussion is strictly limited to peti-

tain information which at least gives rise to a reasonable inference sufficient to establish probable cause that the child is in need of protection or services which can be ordered by the court." *Courtney E.*, 184 Wis. 2d at 595-96, 516 N.W.2d at 423.

■

The trial court rejected Thomas's argument that *Courtney E.* requires the State to both allege and prove the availability of court-ordered services suitable to his needs, and eventually entered the final CHIPS dispositional order. Thomas's appeal, arguing the interpretation of several statutes and the applicability of *Courtney E.* to the facts of the case, raises issues of law which we review de novo.[4]

*Courtney E.* began with a petition alleging that the child was in need of protection or services under § 48.13(3), STATS., which gives the court CHIPS jurisdiction over children who have been victims of sexual or physical abuse. The factual allegations were simply that the child was under the age of sixteen and was pregnant, and the trial court dismissed the petition for its failure to explain why the child was believed to be in need of protection or services.

The supreme court agreed, concluding that the petition's limited factual allegations were inadequate. *Id.* at 601, 516 N.W.2d at 426. The court stated that,

tions under § 48.13(3), STATS., alleging sexual abuse. *In re Courtney E.*, 184 Wis. 2d 592, 600 n.5, 516 N.W.2d 422, 425 (1994).

[4] The interpretation and application of judicial authority can be no less a question of law than the interpretation and application of statutes, and we have long held that the interpretation and application of statutes raise a legal question to be decided independently on appeal. *See State v. Michels*, 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987).

while the allegation that the child was under sixteen and pregnant was sufficient to give rise to an inference that she had been a victim of sexual abuse, "[t]his, however, is not enough." *Id.*

> [T]he petition must also allege and contain information which at least gives rise to a reasonable inference sufficient to establish probable cause that Courtney is in need of protection or services *which can be ordered by the court*. The petition in this case states only that Courtney "is a child in need of protection or services, within the meaning of *Wis. Stat.* 48.13(3), in that she is the victim of sexual abuse." The petition offers no information, aside from the facts relating to her age and pregnancy, to support the allegation that Courtney is in need of protection or services that the court can provide.

*Id.* (emphasis added) (citation omitted).

Seizing on the italicized phrase—which, as may be seen, is taken from the introductory language to § 48.13, STATS., granting the juvenile court jurisdiction over children "alleged to be in need of protection or services which can be ordered by the court"—Thomas argues that both the statute and *Courtney E.* require the State to allege and prove in CHIPS cases that "there are services the court can provide for the child."

We are satisfied that *Courtney E.* does not compel such a conclusion. We begin by noting that the *Courtney E.* court was not called upon to address—and did not address—whether the petition was insufficient for failure to allege or specify the types of services the court could provide. As appears from the language quoted immediately above, the court's decision was grounded on the inadequacy of the petition's recitation of the facts to establish, *prima facie*, that the child was in need of protection or services. The court felt that the

petition did not provide an adequate statement of the "information which forms the basis of the allegations necessary to invoke the jurisdiction of the court" as required by § 48.255(1)(e), STATS., and dismissed it.[5] *Courtney E.*, 184 Wis. 2d at 600, 516 N.W.2d at 425.

Section 48.255(1)(e), STATS., however, is inapplicable to CHIPS petitions that arise from the commission of a delinquent act under § 48.13(12), as is the petition in this case. By its express terms, § 48.255(1)(e) is limited to petitions filed under subsections (1)-(11) of § 48.13. Subsection (12) is plainly not included in the "information" requirements of § 48.255(1)(e).

Section 48.255(1)(d), STATS., on the other hand—the statute applicable to Thomas's petition—sets forth only limited requirements for the petition: "If violation of a criminal statute . . . is alleged, [the petition must set forth] the citation to the appropriate law or ordinance as well as facts sufficient to establish probable cause that an offense has been committed and that the child . . . committed the offense." There is no question in this case that the petition alleged facts "sufficient to establish probable cause" that Thomas committed an offense; that is all that § 48.255(1)(d) requires.

---

[5] Section 48.255(1)(e), STATS., provides:

> If the child is alleged to come within the provisions of s. 48.13 (1) to (11) . . . [the petition must set forth] reliable and credible information which forms the basis of the allegations necessary to invoke the jurisdiction of the court and to provide reasonable notice of the conduct or circumstances to be considered by the court together with a statement that the child is in need of supervision, services, care or rehabilitation.

Section 48.255(3) states, "If the information required under sub. (1)(d) or (e) is not stated the petition shall be dismissed . . . ."

267

We think *Courtney E.* is distinguishable not only because it was expressly limited to consideration of a jurisdictional statute not at issue in this case but also because that jurisdictional statute, § 48.13(3), STATS.—*like all other subsections of § 48.13 <u>except sub-section (12)</u>,* the one at issue here—is directed to children who are *subject to* harm. Subsection (12), however, is directed toward the child who, by committing a delinquent act that but for his or her youth would be a crime, has *caused* harm to another. This distinction is reflected in the separate and distinct treatment § 48.255 gives to subsection (12) petitions and petitions under other subsections of § 48.13. We thus conclude that *Courtney E.* is inapposite.[6]

---

[6] We also disagree with Thomas's reading of the "tag-end" phrase in § 48.13, STATS. (giving the court jurisdiction over children alleged to be in need of protection or services "which can be ordered by the court"), as requiring the State to put on evidence of the array of available "services" at the dispositional hearing. Would the State in this case be required to put on evidence that the court could order a social worker to supervise Thomas's progress in required therapy—or to order periodic reports on his progress? We think not. The allegations in the State's petition in this case set forth in detail the terrible events giving rise to its assertion that Thomas is in need of court-ordered protection or services under the provisions of the juvenile code. And it is the State's obligation under the code to provide a report to the court in advance of the dispositional hearing setting forth, among other things, "[a] description of the specific services or continuum of services which the agency is recommending that the court order for the child or family . . . ." Section 48.33(1)(c), STATS.

Such a report was prepared and presented in this case, and the court adopted the agency's recommendations. To read the introductory language to § 48.13, STATS., as requiring such

Citing *In re T.M.S.*, 152 Wis. 2d 345, 357, 448 N.W.2d 282, 287 (Ct. App. 1989), Thomas asserts that CHIPS proceedings should "emphasize the child's future well-being and family values, not [his] culpability." We note first that *T.M.S.* was a termination-of-parental-rights case based on the parent's failure to comply with a CHIPS order; it was not a CHIPS proceeding based on the child's commission of delinquent acts. Second, while it is true that the legislature has stated that "[t]he best interests of the child shall always be of paramount consideration" in construing and applying provisions of the juvenile code, § 48.01(2), STATS., the statute states that "the public safety" and "the interests of the public" are also to be considered. Section 48.01(1)(a) and (2). We believe such "public-interest" considerations are even more forcefully present in cases where the proceedings are based on the commission of delinquent acts.

There is no question that causing the death of another child is an intensely traumatic event for a ten-year-old such as Thomas. Nor can there be any question that, as a central figure in the process, the juvenile court must be concerned in a case such as this with the protection and advancement of not only Thomas's individual interests but the public's as well. And we think the distinction drawn in § 48.13, STATS., between children who are subject to harm and those who cause

information to be presented in the very first document filed in the case—before the agency has had the opportunity to fully investigate the matter—makes no sense. The same may be said for the assertion that the language requires the State to come forth at the dispositional hearing with some sort of "proof" of available services in addition to the report required by § 48.33 (1). *Courtney E.* imposes no such requirement, nor, in our opinion, does § 48.13.

harm is important—even though the child who causes harm may himself or herself be harmed by the act.

Under the circumstances of this case, Thomas is unquestionably a child in need of assistance in his own right—to aid him in dealing with the trauma of the shooting. But he is also one who, by his own acts, has inflicted grievous harm on others; and because of that, there is a significant public interest present in the case, as the State ably explains in its brief:

> Even though Thomas . . . may need services, the public also needs, as does the family of A.S., to be assured that they will be protected. The Court can do that. Such protection should go beyond [statements by Thomas's parents and his therapist] that they are doing everything to [e]nsure [that] such an act . . . does not happen again. A community has the right to know, and the State has the obligation to provide, supervision over Thomas as a precaution to confirm that everything is being done to [e]nsure [that] such an incident . . . does not happen again . . . .

Still disagreeing, Thomas asserts that the "services" that the State recommended in its report to the court—and which the court adopted in its order—do little more than what his parents are doing for him on their own: prohibiting him from access to firearms, providing him with therapy and closely supervising his activities. Thus, says Thomas, the proceeding was a waste and the State completely failed to establish that there were any needed services that the court could order for him. We disagree.

The dispositional order places Thomas under the "supervision" of the county human services department for one year and sets several conditions that he, his parents and others are to meet. As Thomas points

out, some of the conditions—that he not possess weapons, that he continue in therapy and that his parents closely supervise his activities—are "rules" he and his parents have been following on their own. The order, however, goes on to require that Thomas's parents participate in recommended counseling and cooperate and provide necessary information about his progress to the social worker supervising his case; that the therapists and professionals working with Thomas and his family provide "progress reports" on his situation; and that his school report any behavioral or disciplinary problems to the social worker.

These requirements bear an obvious relation to the trial court's obligation to consider the public interest in cases such as this. In its oral decision at the conclusion of the dispositional hearing, the court emphasized that it was an unusual case: a "very young" child, who has had no prior contacts with the juvenile justice system and has a "very supportive" family, has committed a "very serious offense." For those reasons, the court felt it necessary to involve a county social worker as "a supervisory contact for the court." The court explained:

> The court isn't required to accept a parent's viewpoint nor a psychologist['s] or a therapist's viewpoint of a proper response to a particular situation . . . . It's . . . the responsibility of that worker to [evaluate] whether . . . the circumstances are appropriate and improving or perhaps they're not improving and need some additional attention.
>
> . . . Quite frankly, you all work with the best intentions and cooperate with [each other] in providing services for th[e] child. But in the long run, the social worker is the court supervisory contact not so much different than a probation or parole service . . . .

271

We believe the "services" ordered by the court—which comprise, in essence, a system of rules and reporting requirements supervised by a court-appointed agency—are well within the court's powers under ch. 48, STATS.

*By the Court.*—Order affirmed.