Town of Avon, Plaintiff-Respondent,

v.

Edgar Oliver, Defendant-Appellant.†

Court of Appeals

*No. 01–1851. Submitted on briefs January 11, 2002.—Decided March 21, 2002.*

2002 WI App 97

(Also reported in 644 N.W.2d 260.)

† Petition to review denied 6-11-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gary A. Glojek* and *Mark R. Toth* of *Glojek Limited,* West Allis.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kenneth W. Forbeck* of *Forbeck, Elliott, Monahan & Schomber S.C.,* Beloit.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. VERGERONT, P.J. Edgar Oliver appeals an order of the trial court granting the Town of Avon a permanent injunction enjoining Oliver from using a "sport shooting range" on his agricultural property. Oliver argues that a conditional use permit is not required because: (1) Wis. Stat. §§ 66.0409(2) and 895.527(5) (1999–2000)[1] prohibit local zoning ordinances from regulating sport shooting ranges in place prior to June 18, 1998; and (2) even if the zoning ordinance does control, the sport shooting range is permitted as an "accessory use" to agricultural property. We conclude that the plain language of §§ 66.0409(2) and 895.527 does not prohibit a local zoning ordinance in effect on June 18, 1998, from regulating Oliver's sport shooting range, which has been in place since March 1998. We also conclude that the trial court correctly decided that Oliver's sport shooting range is

---

[1] WISCONSIN STAT. § 66.0409 (1999–2000) was previously numbered WIS. STAT. § 66.092 (1997–98). However, because the statute itself is exactly the same, we will refer to it as currently codified in the 1999–2000 version. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

651

not an accessory use to prime agricultural property as defined in the Town's zoning ordinance. We therefore affirm the permanent injunction prohibiting Oliver's use of the sport shooting range.

## BACKGROUND

¶ 2. Most of the relevant facts are not disputed. Oliver owns real property in the Town of Avon and his property is zoned A Prime Agricultural. The Town's zoning ordinance, in effect since June 12, 1978, categorizes the uses allowable in each zoning district as follows:

> G. USE REGULATIONS: Only the following uses or their essential services shall be allowed in any district:
>
> 1. Principal Uses specified for a district.
>
> 2. Accessory Uses are permitted in any district but not until their principal structure is present or under construction . . . .
>
> 3. Conditional Uses and their accessory uses shall be permitted in specified districts after review by the Board of Adjustment, public hearing, and approval by the Town Board in accordance with the procedures and standards established herein.
>
> . . . .
>
> 5. If a use is not specifically mentioned, specified or provided for in this Ordinance, then, before such use may be made of any property within the Town of Avon, application shall be made to the Town Zoning Committee for an amendment to this Ordinance permitting such use in the district or districts specified in the application, such application for amendment to be made in accordance with the procedures set forth in this Ordinance.

Town of Avon, Wis., Zoning Ordinance § 3G (1978).

¶ 3. The ordinance defines a "principal use" as a "main or primary use of land . . . ., as distinguished from a conditional, subordinate or accessory use, as specified and permitted by the regulations of the district in which it is located." Town of Avon, Wis., Zoning Ordinance § 2B (1978). An "accessory use" is "[a] subordinate use on the same lot which is incidental and customary in connection with the principal or conditional use." *Id.* A "conditional use" is "[a] use of such a special nature as to make impractical its predetermination as a principal use in a district." *Id.*

¶ 4. The principal uses for property zoned A Prime Agricultural are: general farming,[2] forestry, grazing, hatcheries, nurseries, orchards, paddocks, poultry raising, stables, truck farming, and "[o]ther appropriate agricultural pursuits." Town of Avon, Wis., Zoning Ordinance § 4B (1978).

¶ 5. In March 1998, Oliver began sport shooting on his property. Oliver concedes that a "sport shooting range," as defined in the Wisconsin Statutes,[3] is located

---

[2] The Town's ordinance provides that "general farming" includes:

> dairying, livestock and poultry raising, nurseries, greenhouses and other similar enterprises or uses, provided that no greenhouses or buildings for the housing of livestock or poultry shall be located within 100 feet of any boundary of a residential or commercial lot other than that of the owner or lessee of such greenhouses or buildings containing such livestock or poultry.

Town of Avon, Wis., Zoning Ordinance § 4B (1978).

[3] A "sport shooting range" is defined in Wis. Stat. § 66.0409(1)(c) as "an area designed and operated for the practice of weapons used in hunting, skeet shooting and similar sport shooting," and in Wis. Stat. § 895.527(1) as "an area designed and operated for the use and discharge of firearms."

653

on his property, and that he and others periodically use it. Oliver's sport shooting range consists of five round shooting targets, placed 100 yards apart with the furthest 500 yards away, and another target forty-eight by forty-eight inches square at a distance of 1,000 yards. According to Oliver, when he and his friends use the sport shooting range, two or three individuals shoot at one time.

¶ 6. The Town of Avon advised Oliver that continued use of the sport shooting range required a conditional use permit, but neither Oliver nor anyone on his behalf applied for a conditional use permit. The Town sought a permanent injunction prohibiting Oliver from using his property as a target shooting range or a sport shooting range. After an evidentiary hearing, the trial court concluded that neither WIS. STAT. § 895.527(5) nor WIS. STAT. § 66.0409 prohibited the Town from applying its zoning ordinance to Oliver's sport shooting range. The court also determined that the sport shooting range was neither a principal use nor an incidental or customary use under the Town's zoning ordinance. Accordingly, it entered a permanent injunction prohibiting Oliver from using his property as a sport shooting range.

## DISCUSSION

¶ 7. Oliver argues that WIS. STAT. §§ 66.0409 and 895.527 prohibit the Town from regulating his sport shooting range. The interpretation of these statutes presents a question of law, which we review de novo. *See CSO Servicing Corp. v. City of Eau Claire*, 196 Wis. 2d 77, 82, 536 N.W.2d 731 (Ct. App. 1995). The purpose of statutory construction is to give effect to the legislature's intent. *Id.* When statutes relate to the

same subject matter, we consider them together and attempt to harmonize them. *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 56, 133 N.W.2d 393 (1965). We first examine the language of the statute itself and if that plainly expresses the legislative intent, we apply that language to the facts at hand. *See CSO Servicing Corp.*, 196 Wis. 2d at 82. In all cases we are obligated to construe statutes in a manner that avoids absurd or unreasonable results. *See Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 376, 597 N.W.2d 687 (1999). Thus, we do not consider disputed language in a statute in isolation, but in the context of the entire statute. *Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515.

¶ 8. WISCONSIN STAT. § 66.0409 applies to the local regulation of firearms and provides in relevant part:

> **(2)** Except as provided in subs. (3) and (4), no political subdivision may enact an ordinance or adopt a resolution that regulates the sale, purchase, purchase delay, transfer, ownership, use, keeping, possession, bearing, transportation, licensing, permitting, registration or taxation of any firearm or part of a firearm, including ammunition and reloader components, unless the ordinance or resolution is the same as or similar to, and no more stringent than, a state statute.
>
> **(3)** . . . .
>
> (b) Nothing in this section prohibits a city, village or town that is authorized to exercise village powers under s. 60.22(3) from enacting an ordinance or adopting a resolution that restricts the discharge of a firearm.
>
> **(4)** (a) Nothing in this section prohibits a political subdivision from continuing to enforce an ordinance or resolution that is in effect on November 18, 1995, and

that regulates the sale, purchase, transfer, ownership, use, keeping, possession, bearing, transportation, licensing, permitting, registration or taxation of any firearm or part of a firearm, including ammunition and reloader components, if the ordinance or resolution is the same as or similar to, and no more stringent than, a state statute.

. . . .

(c) Nothing in this section prohibits a political subdivision from enacting and enforcing a zoning ordinance that regulates the new construction of a sport shooting range or when the expansion of an existing sport shooting range would impact public health and safety.

¶ 9. WISCONSIN STAT. § 895.527 applies to the local regulation of "sport shooting ranges" and provides:

**Sport shooting range activities. (1)** In this section, "sport shooting range" means an area designed and operated for the use and discharge of firearms.

**(2)** A person who owns or operates a sport shooting range is immune from civil liability related to noise resulting from the operation of the sport shooting range.

**(3)** A person who owns or operates a sport shooting range is not subject to an action for nuisance or to zoning conditions related to noise and no court may enjoin or restrain the operation or use of a sport shooting range on the basis of noise.

**(4)** Any sport shooting range that exists on June 18, 1998, may continue to operate as a sport shooting range at that location notwithstanding any zoning ordinance enacted under s. 59.69, 60.61, 60.62, 61.35 or 62.23(7), if the sport shooting range is a lawful use or a legal nonconforming use under any zoning ordinance

enacted under s. 59.69, 60.61, 60.62, 61.35 or 62.23(7) that is in effect on June 18, 1998.

**(5)** Any sport shooting range that exists on June 18, 1998, may continue to operate as a sport shooting range at that location notwithstanding all of the following:

(a) Section 167.30, 941.20(1)(d) or 948.605 or any rule promulgated under those sections regulating or prohibiting the discharge of firearms.

(b) Section 66.092(3)(b) [s. 66.0409(3)(b)] or any ordinance or resolution.

(c) Any zoning ordinance that is enacted, or resolution that is adopted, under s. 59.69, 60.61, 60.62, 61.35 or 62.23(7) that is related to noise.

**(6)** A city, village town or county may regulate the hours between 11:00 p.m. and 6:00 a.m. that an outdoor sport shooting range may operate, except that such a regulation may not apply to a law enforcement officer as defined in s. 165.85(2)(c), a member of the U.S. armed forces or a private security person as defined in s. 440.26(1m)(h) who meets all of the requirements under s. 167.31(4)(a) 4.

**(7)** A person who is shooting in the customary or a generally acceptable manner at a sport shooting range between the hours of 6:00 a.m. and 11:00 p.m. is presumed to not be engaging in disorderly conduct merely because of the noise caused by the shooting.

¶ 10. Oliver first relies on the prohibition in Wis. Stat. § 66.0409(2) against the enactment of an ordinance that regulates the use of any firearm if it is more stringent than a state statute. According to Oliver, the Town's ordinance is more stringent than a state statute because Wis. Stat. § 895.527(5) prohibits local regula-

657

tion of all sport shooting ranges in existence on or before June 18, 1998, even if the sport shooting range is not a lawful or legal nonconforming use.

¶ 11. We disagree with Oliver's reading of these statutes. Oliver reads WIS. STAT. § 895.527(5) in isolation and overlooks § 895.527(4). Subsection (4) provides that a sport shooting range existing on June 18, 1998, may continue to operate provided it is a lawful or legal nonconforming use under a zoning ordinance in effect on June 18, 1998. If Oliver's construction of subsec. (5) is correct, then subsec. (4) is superfluous: if all sport shooting ranges that existed on June 18, 1998, may continue to operate under subsec. (5), it is unnecessary to specify that sport shooting ranges that existed on June 18, 1998, and were lawful or legal non-conformed uses under zoning ordinances then in existence may continue to operate under subsec. (4). However, we are to construe a statute, where possible, so that no part of it is rendered superfluous. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992). Considered in the context of the entire section, the plain meaning of subsec. (5) is to further clarify the effect of particular criminal laws and local ordinances on the sport shooting ranges referenced in subsec. (4)—those that were both in existence on June 18, 1998, and lawful or legal nonconforming uses under a zoning ordinance in effect on that date. Therefore, there is no conflict between WIS. STAT. § 66.0409(2) and applying a zoning ordinance that was in effect on June 18, 1998, to a sport shooting range on that date.

¶ 12. Oliver also contends that the exception in WIS. STAT. § 66.0409(4)(c) does not apply because his sport shooting range is not a new construction or expansion of a sport shooting range.

¶ 13. This argument is both factually and legally flawed. Oliver's sport shooting range did *not* exist in 1995, when Wis. Stat. § 66.0409's predecessor was first enacted.[4] Thus § 66.0409(4)(c) plainly does permit enforcing a zoning ordinance that regulates his sport shooting range. Moreover, para. (4)(c) unambiguously expresses the legislature's intent that § 66.0409 does not affect the ability of political subdivisions to enact and enforce zoning ordinances to regulate sport shooting ranges. The reference to "new construction" or "expansion" simply means that the legislature assumed that sport shooting ranges that existed on the date the statute was enacted were permitted under existing zoning ordinances.[5]

¶ 14. We conclude that Wis. Stat. § 66.0409 does not prohibit municipalities from enacting and enforcing zoning ordinances that apply to sport shooting ranges, and that Wis. Stat. § 895.527 does not prohibit the Town of Avon from applying its zoning ordinance to Oliver's sport shooting range unless that was a lawful use under the ordinance as of June 18, 1998.

¶ 15. Oliver next argues that his sport shooting range is lawful under the Town's zoning ordinance—both as of June 18, 1998, and presently—because it is an "accessory use," which does not require a conditional

---

[4] Wisconsin Stat. § 66.092 (1995–96), the predecessor to Wis. Stat. § 66.0409, was enacted on November 16, 1995, and became effective on November 18, 1995. 1995 Wis. Act 72.

[5] Oliver also contends that the exception under Wis. Stat. § 66.0409(3)(b) does not apply because the zoning ordinance does not restrict the discharge of a firearm. We agree with Oliver that the Town's zoning ordinance does not come within this exception. However, this exception is irrelevant in view of our conclusion regarding § 66.0409(4)(c).

use permit. According to Oliver, his sport shooting range must be considered an accessory use because it makes up less than 1% of his 300–acre property, and it is similar to other recreational activities enjoyed by adjacent landowners on their property such as hunting and riding all-terrain vehicles.

¶ 16. The interpretation of an ordinance and its application to a set of undisputed facts is a question of law, which we review de novo. *County of Adams v. Romeo*, 191 Wis. 2d 379, 383, 528 N.W.2d 418 (1995). When interpreting an ordinance, we apply the same rules of construction that we apply to statutes. *Schroeder v. Dane County Bd. of Adjustment*, 228 Wis. 2d 324, 333, 596 N.W.2d 472 (Ct. App. 1999).

¶ 17. Plainly, a sport shooting range is not one of the primary uses in a prime agricultural district, and Oliver has no conditional use permit for any other uses. Therefore, in order to constitute an accessory use, the sport shooting range must be a subordinate use that is "incidental and customary in connection with" one of the principal uses. We understand Oliver to argue that the shooting range is an accessory use to general farming, but our analysis would be the same for any other principal use for prime agricultural districts.

¶ 18. The parties have not directed us to any published Wisconsin case addressing this definition of "accessory use" and we have located none. However, the terms "incidental" and "customary" are very common components of definitions of "accessory use," and we therefore have the benefit of zoning treatises and cases from other jurisdictions as aids in our interpretation.[6]

---

[6] The dictionary definition for "incidental" is: "subordinate, nonessential, or attendant in position or significance . . . : oc-

¶ 19. According to 2 E. C. YOKLEY, ZONING LAW AND PRACTICE § 8.2 (4th ed. 1978), a use is incidental if the use is not "the primary use of the property," is "minor in significance," and has a "reasonable relationship with the primary use." "Incidental," in the context of accessory use, means not only that the disputed use is subordinate to or minor in significance compared to the principal use, but also that it has a reasonable relationship to the primary use. *Henry v. Board of Appeals of Dunstable*, 641 N.E.2d 1334, 1336 (Mass. 1994).

¶ 20. "Customary," according to 83 AM. JUR. 2D *Zoning and Planning* § 224 (1992), which Oliver relies on, adds these additional requirements as part of its accessory use discussion:

> [W]hether a use of land is permitted as an accessory use, it is not enough to determine whether that use is incidental to the main use; the use must be habitually, commonly, and by long practice established as a reasonable use. Factors to consider are: size of the lot in question; nature of the primary use; use made of adjacent lots; economic structure of the area; and the actual incidents of similar use in the area.

*Accord* 2 KENNETH H. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 9:28 (4th ed. 1996). Cases from other jurisdic-

curring as a minor concomitant." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1142 (unabr. ed. 1993). Subordinate is defined as: "1: . . . holding a lower or inferior position." *Id.* at 2277 (also including definition "subordinate . . . 1: . . . make or consider as of less value or importance"). Since "incidental" is defined as "subordinate," but also has more specific definitions, we conclude the use of "subordinate" in this ordinance's definition of "accessory use" does not add any qualification not conveyed by "incidental," and therefore we focus our analysis on the words "incidental and customary."

tions illustrate the application of the requirement that the disputed use be customarily connected with the principal use. *See, e.g., Town of Salem v. Durrett,* 480 A.2d 9, 11 (N.H. 1984) ("[T]he use must be 'habitually . . . established as reasonably associated with the primary use' . . . a rare association of uses cannot qualify as customary, though the uses need not be joined in a majority of instances of the principal use."); *Champaine v. Zoning Hearing Bd. of East Bradford Township,* 374 A.2d 752, 754 (Pa. Commw. Ct. 1977) ("[P]roof of customary incidence has entailed a showing that a significant percentage of like principal uses in the area have accessory uses of the nature and extent in question."); *Colts Run Civic Ass'n v. Colts Neck Township Zoning Bd. of Adjustment,* 717 A.2d 456, 462 (N.J. Superior Ct. Law Div. 1998) ("[A] court must 'determine whether [the proposed use] has commonly, habitually and by long practice been established as reasonably associated with the primary use' . . . not [a use] 'peculiar to the applicant' but rather one 'prevailing generally.' ").

¶ 21. We conclude that in order to establish that his sport shooting range is an accessory use to the principal use of general farming, Oliver must show that the sport shooting range is reasonably associated with general farming, but minor in significance compared to general farming ("incidental"), and is commonly and by long practice established as reasonably associated with general farming in the area of the property ("customary"). Oliver does not appear to disagree that he must satisfy this standard, and he does not argue that the trial court did not apply this standard.[7] Rather, he

---

[7] The trial court made a finding that "[a] target shooting range or sport shooting range is not so necessary or commonly

662

contends that the undisputed facts show that he met this standard. We agree with Oliver that the facts relevant to whether the sport shooting range is "incidental" to general farming are not disputed, but we conclude that, as a matter of law, they do not establish that the sport shooting range is incidental to general farming. The record shows that the sport shooting range is minor in size compared to Oliver's entire acreage, and it is reasonable to infer that use of his property as a sport shooting range is of minor significance compared to its use for general farming. However, the record does not show any reasonable association between the activities involved in the sport shooting range and the activities of general farming.

¶ 22. In addition, with respect to whether a sport shooting range is commonly and by long practice reasonably associated with general farming in the area, we do not agree with Oliver that the relevant facts are undisputed. Oliver testified at the temporary injunction hearing that target practice takes place on three properties close to his farm. However, Oliver did not testify to the primary uses of these properties and could not state whether the owners had a special use permit for shooting practice. Patrick O'Neill, chairperson of the Town of Avon, testified that he could recall a past

to be an expected use in conjunction with [p]rime [a]gricultural land," apparently employing a definition of accessory use that Oliver offers from 83 AM. JUR. 2D *Zoning and Planning* § 224 (1992): "An accessory use has been defined as a subordinate use, customarily incident to the principal use, and so necessary or commonly to be expected in conjunction therewith that it cannot be supposed that an ordinance was intended to prevent it." (Footnotes omitted.) Although we have not used this exact formulation, we see no significant difference between this definition and the one we have adopted.

663

neighbor who did fire his gun with regularity, but to the best of O'Neill's recollection the neighbor did not have anyone else come over and shoot with him as Oliver does. With regard to other property that Oliver testified was used as a shooting range, O'Neill testified that he did not believe that it was regularly used as one. O'Neill also testified at the hearing on the permanent injunction that he knew of many people in the Town who hunt, and that they probably did sight their rifles or weapons by shooting them on their properties. However, he did not testify that this activity was in conjunction with a sport shooting range on agricultural property used as a farm.

¶ 23. Although the trial court did not make specific findings on the extent of sport shooting ranges on other prime agricultural properties in the area, we assume the court implicitly made those findings necessary to support its decision, and we accept those implicit findings if they are supported by the record. *See Sohns v. Jensen,* 11 Wis. 2d 449, 453, 105 N.W.2d 818 (1960). The testimony in this case supports the trial court's decision that a sport shooting range is not a customary use in connection with general farming in the area. More specifically, the record does not show that a sport shooting range is commonly and by long practice reasonably associated with general farming in the area.

¶ 24. Oliver argues that his sport shooting range is similar to other recreational activities enjoyed by adjacent landowners, such as hunting and riding all-terrain vehicles. However, there is no indication in the ordinance, or in any authority Oliver has provided, that a use is an accessory use solely because it may be

described as a recreational activity; and at least one other court has expressly rejected this argument. *Town of Aurora v. Kranz*, 478 N.Y.S.2d 218, 219 (N.Y. App. Div. 1984) (disagreeing with trial court's reasoning that whether the use was for a general "recreational purpose" is relevant determination of accessory use), *aff'd*, 473 N.E.2d 262 (N.Y. 1984). Whether a sport shooting range may be considered a "recreational activity," and what other types of activities that may be described as "recreational activities" take place on similarly zoned property, is not pertinent to whether Oliver's sport shooting range is an accessory use to general farming.

¶ 25. In summary, we conclude the trial court correctly decided that Oliver's sport shooting range is not an accessory use to prime agricultural property under the Town's zoning ordinance. And, as we have held above, the plain language of WIS. STAT. §§ 66.0409(2) and 895.527 does not prohibit a local zoning ordinance in effect on June 18, 1998, from regulating Oliver's sport shooting range. Accordingly, we affirm the trial court's permanent injunction prohibiting Oliver's use of the sport shooting range.

*By the Court.*—Order affirmed.