**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1089**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018JC114

**IN COURT OF APPEALS
DISTRICT I**

IN THE INTEREST OF J.A., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

      RESPONDENT-APPELLANT,

   V.

M. A.,

      PETITIONER-RESPONDENT,

J. A.,

      RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed*.

¶1    DUGAN, J.[1]  The State of Wisconsin appeals from the trial court's order granting relief on M.A's petition alleging that J.A., her son, was a child in need of protection or services (CHIPS).  The State argues that the trial court erred by (1) finding that M.A.'s petition was sufficient, (2) denying the State's motion for summary judgment, (3) finding that it had jurisdiction over the petition, (4) denying the State's motion to dismiss, and (5) issuing the dispositional order.  This court is not persuaded by the State's arguments and, therefore, we affirm the trial court's order.

## BACKGROUND

¶2    The background of the State's appeal from the dispositional order on M.A's CHIPS petition, also involves several juvenile cases that involve J.A. that were initially filed as delinquency cases.

¶3    In December 2016, the State filed a delinquency petition charging J.A. with sexual assault.  Later in December 2016, the State filed a second sexual assault delinquency petition.  In January 2017, a juvenile in need of protection or services (JIPS) petition was filed relating to each of those cases.  J.A. was placed in the parental home for both of those cases.

¶4    In June 2017, a third sexual assault matter was filed, and a JIPS petition for that case was filed in July 2017.  J.A. was placed in the home under a JIPS dispositional order in that third case.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶5 In November 2017, the State sought to change J.A.'s placement to an out of state residential treatment center. However, in February 2018, the State filed a request to change J.A.'s placement to St. Charles, a residential treatment center in Milwaukee.[2] On approximately March 13, 2018, in conjunction with the JIPS cases, J.A. was placed at St. Charles.

¶6 On March 7, 2018, M.A. filed a CHIPS petition in the Milwaukee County Circuit Court relating to J.A. J.A. turned fifteen years old in April 2018. The petition alleged that M.A. needed assistance to care for J.A. and to maintain his placement in the parental home based on J.A.'s diagnosed autism, asthma, attention deficit/hyperactivity disorder, his bipolar disorder, his numerous medications, and the delinquency charges against J.A. which included sexual assault of a child under sixteen years of age, second-degree sexual assault, attempted false imprisonment, and disorderly conduct.[3] The petition further alleged that, originally, the State charged J.A. in the delinquency cases; however, because J.A. was later declared incompetent, the cases were converted to JIPS cases.

¶7 At a March 15, 2018 hearing, the State argued that M.A.'s CHIPS petition was not legally sufficient. M.A. and the guardian *ad litem* (GAL) argued

---

[2] St. Charles provides residential treatment services for male youth, ages 13-17 years requiring residential treatment due to mental health needs and/or in conjunction with court involvement. *See* stcharlesinc.org

[3] K.A., who is J.A.'s father and M.A.'s husband, was named in M.A.'s petition, default was entered, and then a dispositional order was entered against him. He is not a party to this appeal.

M.A. and K.A. also have two younger daughters.

that M.A.'s petition was legally sufficient. The trial court determined that the CHIPS petition was legally sufficient.

¶8    On April 6, 2018, J.A. filed a motion for summary judgment on the CHIPS petition. The State filed a brief in opposition to the motion and on May 23, 2018, the State filed a motion for summary judgment. M.A. filed a brief in opposition to the State's motion along with supporting documents and the State filed a reply brief.

¶9    At a hearing on August 11, 2018, the trial court rendered an oral decision denying each party's motion the summary judgment. The trial court determined there were not "sufficient undisputed facts upon which this court could grant summary judgment" on each party's motion.

¶10    On September 5, 2018, the trial court conducted a bench trial on the contested CHIPS jurisdiction. It found that M.A. had established that J.A was in need of protection or services and, therefore, it had jurisdiction pursuant to WIS. STAT. § 48.13(4).

¶11    At a disposition hearing on October 15, 2018, the State orally asked for dismissal of the CHIPS case based on the proposed disposition order that M.A. filed. At a December 18, 2018 hearing, the trial court denied the State's motion to dismiss M.A.'s CHIPS case.

¶12    In November 2018, while placed at St. Charles, J.A. was charged with a fourth sexual assault. A JIPS petition followed in December 2018. In January 2019, the trial court granted an extension request for the JIPS petition until February 2020. It explained that it granted the extension in accordance with the GAL's recommendation to assure continuity of services for J.A., even though

it had found J.A. not competent and not likely to gain competency because there was no underlying CHIPS order which would otherwise have assured continuity of services for J.A.

¶13    A contested dispositional hearing was conducted over several dates and the trial court heard the testimony from a number of witnesses, including M.A., SaintA[4] supervisor Rosemary Brunner, and SaintA case manager, Ashley Cooper. At the end of hearing, M.A. changed her placement request for J.A. from out of home to in home. At the conclusion of the March 13, 2018 hearing, the trial court made detailed findings of fact and rendered an oral decision on disposition that continued J.A.'s placement outside the home. The trial court then issued a written dispositional order. This appeal followed.

## DISCUSSION

¶14    The State presents five arguments on appeal. It argues that the trial court erred by (1) finding that M.A.'s petition was sufficient, (2) denying the State's motion for summary judgment, (3) finding that it had jurisdiction over the petition, (4) denying the State's motion to dismiss, (5) and issuing the dispositional order.

¶15    The State's arguments share a common theme and, therefore, our analysis of them overlaps. We, nonetheless, address the arguments in sequence.

---

[4] SaintA is a human services agency that has a contract with the Division of Milwaukee Child Protective Services (DMCPS) to provide services to children. *See* sainta.org

### I. The trial court properly determined that M.A.'s petition was legally sufficient

¶16    The State argues that the trial court erroneously held that the petition was legally sufficient.  It maintains that the petition was insufficient because the petition did not contain any information from which a reasonable inference could be drawn that the trial court could order services for J.A. that J.A. was not already receiving through his JIPS cases or how M.A. wanted help.  The State also asserted that there were unresolved questions as to what services the DMCPS could provide for J.A. or M.A.  The issues presented regarding the sufficiency of M.A.'s petition are questions of law which this court considers *de novo.  See* **State v. Thomas F.**, 196 Wis. 2d 259, 266, 538 N.W.2d 568 (Ct. App. 1995).

¶17    The State's argument relies, in large part, on a statement in **State v. Courtney E.**, that

> a [WIS. STAT. § ] 48.13 CHIPS [child in need of protection or services] petition is not sufficient unless it contains information which at least gives rise to a reasonable inference sufficient to establish probable cause that there is something that the court could order for the child that is not already being provided.

*See* **Courtney E.**, 184 Wis. 2d at 596-97.

¶18    M.A., J.A., and the GAL oppose the State's argument citing this court's holding in **Thomas F.**, 196 Wis. 2d, that **Courtney E.** does not require a petitioner to allege or specify the types of services the court could provide.  In its reply brief, the State argues that J.A. and the GAL incorrectly rely on **Thomas F.**, and that M.A., J.A., and the GAL misinterpret **Thomas F.**  The State's reply brief refers us to the discussion of **Thomas F.** in its initial brief.

¶19     The language in *Courtney E.* that the State quotes must be considered in context—at issue was the sufficiency of a petition for protection or services for a pregnant juvenile under WIS. STAT. § 48.13(3), as a victim of sexual abuse.[5]   *Courtney E.*, 184 Wis. 2d at 596-97.  Our supreme court held that, although the petition contained sufficient facts to establish that Courtney was a victim of sexual assault, the petition was insufficient to establish that she needed protection or services because, other than providing facts regarding Courtney's age and pregnancy, the petition contained no information to establish probable cause that she needed protection or services that the trial court could order.  *See Courtney E.*, 184 Wis. 2d at 596-97.  The supreme court further stated, "[i]t is altogether possible, based on the face of the petition, that Courtney is receiving all of the protection and services that she needs from her family.  The legislature could not have intended for courts to have jurisdiction over a pregnant minor in such a situation." *See id.*  J.A.'s obviously complex mental health, medical, and legal problems are unlike the situation of the pregnant teenager presented in *Courtney E.*

¶20     Moreover, in *Thomas F.*, this court rejected a similar argument to the argument that the State makes in this case.  *See id.*, 196 Wis. 2d at 266-67 & n.6.  In *Thomas F.*, this court held that in CHIPS cases the State is neither required to allege nor to prove that "'there are services that the court can provide for the child.'"  *See id.*, 196 Wis. 2d at 266-67 (citation omitted).  In our analysis, this court noted that "the *Courtney E.* court was not called upon to address—and did not address—whether the petition was insufficient for failure to allege or

---

[5] At the time of her expected delivery date, Courtney E. would have been under the age of sixteen years. *See State v. Courtney E.*, 184 Wis. 2d 592, 596-97, 516 N.W.2d 422 (1994).

7

specify the types of services the court could provide." *See Thomas F.*, 196 Wis. 2d at 266.

¶21 The State argues that *Thomas F.* outlined the differences between CHIPS and delinquency cases and only indicated that *Courtney E.* did not apply to CHIPS cases under WIS. STAT. § 48.12(12), which no longer exists and is now found in WIS. STAT. ch. 938, the Juvenile Justice Code. However, the State does not explain how those facts affect our determination that *Courtney E.* does not address whether a petition is insufficient for failure to allege or specify the types of services the court could provide. *See Thomas F.*, 196 Wis. 2d at 266.

¶22 Additionally, instead of presenting a rebuttal or attempting to refute the response arguments of M.A., J.A., and the GAL on this issue, the State simply relies on its discussion of *Thomas F.* in its initial brief. Thus, the State has conceded M.A., J.A., and the GAL's arguments that *Courtney E.* does not require that a CHIPS petition allege or specify what types of services the court could provide. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). (Failure to refute an argument constitutes a concession.)

¶23 Thus, this court concludes that the trial court properly determined that M.A.'s petition was legally sufficient.

### II. The trial court properly denied the State's summary judgment motion

¶24 The State argues that the trial court improperly denied its motion for summary judgment arguing, in essence, because M.A. did not present admissible evidence regarding the types of services that are needed with respect to J.A. or her care of him. It further argues that the only admissible evidence that M.A.

presented was her deposition testimony that, for various reasons, the State argues was insufficient to create a genuine issue of material fact.

¶25    This court reviews a grant of summary judgment *de novo*, using the same methodology as the trial court, but benefiting from its analysis. *See Eichenseer v. Madison-Dane Cty. Tavern League, Inc.*, 2008 WI 38, ¶30, 308 Wis. 2d 684, 748 N.W.2d 154.  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2) (2017-18).  "In determining whether material facts are at issue, we must ask whether 'only one reasonable inference may be drawn from the undisputed facts.'"  *See Zielinski v. A.P. Green Indus., Inc.*, 2003 WI App 85, ¶7, 263 Wis. 2d 294, 661 N.W.2d 491 (citation omitted).

¶26    The State contends that M.A. failed to present admissible evidence to support the allegations of the petition.  However, the initial issue before this court is whether the State made a prima facie case for its motion for summary judgment.  "We examine the moving party's submissions to determine whether they constitute a prima facie case for summary judgment."  *See Palisades Collection LLC v. Kalal*, 2010 WI APP 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.

¶27    In its motion for summary judgment the State asserted that

> During her deposition [M.A.] made sworn statements that she did not want CPS involved in her life, that she did not want CPS assessing her parenting, that she only wanted the services for her son that he was already getting, that [Wraparound Milwaukee][6] was providing for all of her

---

[6] Wraparound Milwaukee provides services "for children with serious emotional, behavioral, and mental health needs and their families." *See* wraparoundmke.com

son's needs, and that she felt confident that she could provide and was able to provide for her son's needs, among many other statements along those same lines.

¶28 The State relies exclusively on M.A.'s deposition testimony in support of its motion for summary judgment. In its brief on appeal the State argues that "[a]lthough M.A. filed a CHIPS petition alleging that her child was in need of protection or services, that petition is not evidence. Rather, M.A.'s sworn testimony that she did not want child protective services involved in her life is evidence."

¶29 However, the State acknowledges in its brief that WIS. STAT. § 802.08(2), provides, "The judgment sought shall be rendered if the pleadings, depositions … on file … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Therefore, the trial court properly considered M.A.'s petition in determining whether the State's submissions constitute a prima facie case for summary judgment. In that petition M.A. stated:

> [J.A.] has medical diagnosis including asthma, ADHD, autism and bi-polar. [J.A.] takes numerous medications for these diagnosis. [J.A.] has been charged with several delinquency cases including sexual assault of a child under sixteen years of age and second degree sexual assault, attempt false imprisonment and disorderly conduct. Due to [J.A.] being found incompetent on January 20, 2017 … the delinquency cases were converted to JIPS cases … [J.A.] participates in services through Wraparound including medication management, crisis stabiliazer (sic) and individual therapy. [J.A.] has an individualized education plan from June of 2017 which provides special educational support for an emotional behavioral disability. I need court involvement for [J.A.] as there are numerous needs that [J.A.] has that I need services for; I am in need of assistance to care for him and to maintain his placement in the home.

The petition clearly states that J.A. has various needs and that M.A. needs help in addressing those needs.

¶30 Moreover, this court agrees with the trial court's conclusion that M.A.'s deposition testimony is not as clear as any of the parties argued. Although M.A. made statements along the lines that the State described she also made other statements that contradicted those statements. She testified that she was asking for "[h]elp for, extra help for him, for me and him that I been asking for for years." She testified that she asked for more therapy for J.A., because she had researched other therapies that work with kids like J.A. When she was asked what other therapies she answered, "You have to look them up like I did." When the State followed up stating, "I'm asking you", M.A.'s attorney asked to go off the record and she and M.A. had a discussion off the record. When they returned on the record, M.A. answered, "No I don't remember." When M.A. was asked why she wanted a CHIPS case, she testified, "[b]ecause I feel there could be more that could be needed for him."

¶31 The State also argues that trial counsel speculated on summary judgment that M.A. was confused during her deposition. The record refutes the State's assertion. For example, during the deposition there were several times when M.A. did not respond to the question that she was asked. Further, during the deposition that began at 9:30 a.m. and ended at 10:25 a.m., there were six separate times that M.A. and her attorney conferred off the record. One of those occasions occurred when the State asked her what efforts she made to find support groups for parents of children with autism. The State asked, "[w]hat did you do specifically?" M.A. did not respond and the State then stated, "[m]a'am, I'm confused because you told me you didn't look and now you're saying you did."

11

M.A. responded, "[n]o. You're confusing me." M.A. and her attorney then had a discussion off the record.

¶32    The trial court properly noted that in deciding the motions for summary judgment by each party it had to determine whether there was no genuine issue as to any material fact as to whether J.A. was in need of protection or services that could be ordered by the court and whether M.A. was unable or needed assistance in caring for or providing necessary special treatment or care for J.A. It concluded that "I just don't simply find that there are undisputed facts that would support this request [for summary judgment] by any of the parties." This court agrees.

¶33    In reviewing M.A.'s deposition we note that she testified to the key facts alleged in the petition. For example, M.A. testified that for years she had been asking for extra services for J.A. because he is autistic and has mental health problems. M.A. also testified that she would like additional therapies such as horse therapy and other therapies that "work with kids like him." M.A. also testified that she thought that she and her husband would benefit from talking in person to other parents of autistic children.

¶34    M.A.'s deposition does not establish that J.A. is not in need of protection or services that could be ordered by the trial court and that M.A. was able and did not need assistance in caring for or providing necessary special

treatment or care for J.A.. Thus, this court concludes that the State has not established a prima facie case for summary judgment.[7]

### III. The trial court properly concluded that it had jurisdiction over the petition

¶35 The State also argues that the trial court erred when, following the bench trial, it determined that it had jurisdiction over the M.A.'s petition pursuant to WIS. STAT. § 48.13(4). The State cites the statute and two related pattern jury instructions, WIS JI—CHILDREN 230, CHIPS: PARENT (GUARDIAN) UNABLE OR NEEDS ASSISTANCE TO CARE FOR [WIS. STAT. § 48.13(4)], and WIS JI—CHILDREN 232, CHIPS: PARENT (GUARDIAN) UNABLE OR NEEDS ASSISTANCE TO PROVIDE NECESSARY SPECIAL TREATMENT OR CARE [WIS. STAT. § 48.13(4)]. The State, relying on *Courtney E.*, 184 Wis. 2d 592, asserts that the trial court erred in finding that it had jurisdiction because M.A. did not provide proof of specific services that the trial court could order for J.A.

¶36 WISCONSIN STAT. § 48.13(4) provides:

> the court has exclusive jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court if … the child's parent … signs a petition requesting jurisdiction under this subsection and is unable or needs assistance to care for or provide necessary special treatment or care for the child.

---

[7] If the moving party's submissions constitute a prima facie case for summary judgment, "then we examine the opposing party's submissions to determine whether there are material facts in dispute that entitle the opposing party to a trial." *See Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503 (internal citation omitted). Here, because we conclude that the State's submissions do not constitute a prima facie case for summary judgment, we need not address the State's argument that M.A. failed to present any evidence to create a genuine issue of material fact.

The State also cites the definition in WIS JI—CHILDREN 230 for "unable or in need of assistance to care for"[8] and the definition in WIS JI—CHILDREN 232 for "special treatment or care."[9]

¶37    The State's argument is merely a variant of its argument that M.A. must show with specificity what necessary treatment or care J.A. needs. However, as we stated, ***Thomas F.*** specifically addresses and rejects that contention. *See id.*, 196 Wis. 2d at 266. Furthermore, ***Thomas F.*** also expressly held that the language in WIS. STAT. § 48.13 stating, "which can be ordered by the court," did not require the petitioner to "put on evidence of the array of available 'services' at the dispositional hearing." *See **Thomas F.**, 196 Wis. 2d at 268 n.6.

¶38    After the bench trial, the trial court held that it had jurisdiction over the matter based only on evidence as of the petition's filing date.[10] The trial court found that J.A. is in need of special treatment based on his diagnosed disorders including autism, bipolarity, and schizophrenia, and his need for constant supervision. Furthermore, the trial court found that M.A. was unable to find

---

[8]WISCONSIN JI—CHILDREN 230 states that "[u]nable or in need of assistance to care for" means that the "(parent) … is unable to provide the level of care necessary to meet the needs of the child despite reasonable efforts of (parent)[.]"

[9] WISCONSIN JI—CHILDREN 232 states that "[s]pecial treatment or care" means:

> professional services which need to be provided to (child) or (child)'s family to protect the well-being of the child, to prevent placement of (child) outside of the home, or to meet the special needs of (child). This term includes, but is not limited to, medical, psychological, or psychiatric treatment; alcohol or other drug abuse treatment; or other services that are necessary and appropriate.

[10] The trial court limited the evidence it considered to that pertaining to time period when M.A. filed the petition but noted that the comments to WIS JI—CHILDREN 180 do not make it clear whether the time period under WIS. STAT. § 48.13(4) is restricted to the time of filing.

14

suitable services for J.A. In this regard, the trial court found that M.A. loves her son dearly, she had regularly asked the human services worker in the JIPS cases for additional services, and that, although M.A. was doing all that she could, she could not always provide assistance for J.A. The trial court also found that "M.A. is not a sophisticated person," she had tried to do "everything within her own ability to assist [J.A.]," and that J.A. had significant needs that M.A. admittedly was unable to fully address.

¶39 While the State relies on the testimony of other testifying witnesses, we afford great deference to trial court's factual determinations including those as to the credibility of witnesses and the weight to be afforded to the evidence. *See Plesko v. Figgie Int'l*, 190 Wis. 764, 775, 528 N.W.2d 446 (Ct. App. 1994) (stating that "[w]hen the trial court acts as the finder of fact, it is the ultimate arbiter of the credibility of witnesses and the weight to be given to their testimony").

¶40 This court concludes that based on its findings, the trial court properly concluded that it had jurisdiction over the matter, because J.A. was in need of special treatment or care, which could be ordered by the court for which M.A. was unable to provide or needed assistance to provide the necessary special treatment or care for J.A.

### III. The trial court properly denied the motion to dismiss

¶41 The State also argues that the trial court improperly denied its motion to dismiss because finding jurisdiction in this case is contrary to the legislative intent of WIS. STAT. § 48.01(1)(a) to protect children. The State further argues that the legislature's intent was to divert children from formal proceedings

under Wis. Stat. ch. 48, citing § 48.01(2)(dm),[11] and it was, therefore, inappropriate to subject J.A. to a CHIPS case when M.A. was acting in a protective manner and she was actively involved with J.A.'s needs without any court order.

¶42 The trial court held that it did not believe that it had the "ability" to dismiss a case, after having found that it had jurisdiction, and that the case was required to proceed to disposition. The trial court relied in part, on *Fond du Lac County DHS v. W.G.B.*, Nos. 17AP2468 and 17AP2469, unpublished slip. op. ¶¶5, 7, 9 (WI App Dec. 5, 2018), a decision issued by one judge for its persuasive value. *See* Wis. Stat. Rule 809.23(1)(b)(4) & (3)(a)-(b). The trial court also cited *W.G.B.*, Nos. 17AP2468 and 17AP2469, ¶¶5, 7, 9, as holding that a JIPS disposition is distinct from a CHIPS disposition and that a dispositional order in a JIPS case does not preclude a dispositional order in a CHIPS case. The trial court also noted that *W.G.B.* holds that, while the safety of the child is a factor under Wis. Stat. ch. 48, it is only one factor among many factors that may be considered in issuing a CHIPS dispositional order.

¶43 The construction of a statute is a question of law. *See State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 109, 121, 561 N.W.2d 769 (1997). Our primary purpose in interpreting a statute is to give effect to the legislature's intent. *See id.* We first examine the language of the statute and, if that language is clear and unambiguous, we interpret the language of the statute in accordance with its ordinary meaning. *See id.* We consider the plain language of the statute as a

---

[11] We have corrected a typographical error in the State's brief that cites Wis. Stat. § 48.01(1)(dm), which does not exist.

whole and we consider that language in context, rather than in isolation. *See Town of Avon v. Oliver*, 2002 WI App 97, ¶7, 253 Wis. 2d 647, 644 N.W.2d 260.

¶44     The State does not cite case law regarding how the legislative intent of a statute is determined and it does not cite case law to support its assertions of the legislative intent of WIS. STAT. § 48.01.  It also selectively quotes portions of the statute and does not place those quotes in the context of the statute.  In short, the State's argument is undeveloped and conclusory and, because of the deficits, we decline to further address it.  *See Petitt*, 171 Wis. 2d at 647.

¶45     We further note that the State failed to address the trial court's primary reason for denying the motion to dismiss; that is, after having determined that it had jurisdiction over the petition, it could not dismiss the case prior to disposition.  Thus, that legal conclusion is unchallenged and we could affirm on that basis alone.

¶46     We conclude that the trial court properly denied the State's motion to dismiss.

### IV.     The trial court properly issued the dispositional order

¶47     The State argues that neither the dispositional order nor its terms were appropriate in this case, citing part of the second sentence of WIS. STAT. § 48.355(1) that states that "[t]he disposition shall employ those means necessary to maintain and protect the well-being of the child … which are the least restrictive of the rights of the parents and the child."  The State further argues that the dispositional order was improper, because JIPS was providing all the necessary services and because the trial court ordered overlapping services in the CHIPS dispositional order, the CHIPS services cannot be considered necessary.

¶48     The trial court based its dispositional order on its findings of fact, which are accepted as true unless they are shown to be clearly erroneous. *See* WIS. STAT. § 805.17(2). The State's argument does not mention the trial court's factual findings and, therefore, we accept those findings. *See **id.***

¶49     The trial court stated that its decision was based on the documents on file, the hearing testimony and evidence that it deemed worthy of consideration, and the GAL's recommendations. The trial court found that, at times M.A. appeared to be unsophisticated, at times she seemed overwhelmed by the process, and at times she was confused by the questions presented to her. The trial court stated that M.A. does not have the ability to provide the full and constant level of supervision that J.A. requires and, "therefore, it does create an impending danger and threat for [J.A.]."

¶50     The trial court then found that "as a matter of law it has been established by clear, convincing and satisfactory evidence that continued placement of the child in his home would be contrary to his welfare." The trial court then read its dispositional order.

¶51     As indicated, the State argues that neither the dispositional order nor its terms were appropriate in this case, citing part of the second sentence of WIS. STAT. § 48.355(1) that refers to the "least restrictive" means. However, the State's legislative intent argument does not consider the "least restrictive" means in the context of the entire sentence. *See **Oliver***, 253 Wis. 2d 647, ¶7. The State also cites no case law to support its argument.

¶52     The second sentence of WIS. STAT. § 48.355(1) reads:

> [t]he disposition shall employ those means necessary to maintain and protect the well-being of the child … which

18

> are least restrictive of the rights of the parent and the child,
> *… and which assure the care, treatment or rehabilitation of the child and the family … consistent with the protection of the public*.

(Emphasis added). The statute does not merely require the least restrictive means with respect to the child and the parent; it also requires that the means assure the care, treatment, or rehabilitation of the child and the family in a way that will also protect the public. In other words, the least restrictive means is not a single, isolated requirement. The least restrictive means must also assure the care, treatment, or rehabilitation of the child and the family and be compatible with the protection of the public. The trial court recounted the JIPS incidents noting that several incidents occurred while J.A. was placed in M.A.'s home. The trial court found that M.A. could not provide all the services that J.A. was receiving through the out of home placement and that M.A. was not otherwise able to meet his needs.

¶53     The State further argues that the services that the trial court ordered for J.A. in the CHIPS case are duplicative of the services being provided in the JIPS cases. In their appellate response brief, M.A., J.A., and the GAL note that while some of the services that the trial court ordered overlapped with services in the JIPS cases, the order in this CHIPS case provided for additional services that were not provided in the JIPS cases. The trial court ordered DMCPS to make reasonable efforts to provide M.A. with additional services including: an "autism specific parenting coach", "family therapy, with a component on autism", and "aid[] in classes for parents of children with special needs." The trial court also ordered DMCPS to evaluate J.A. for speech therapy and to make two referrals for services available with a DMCPS referral that are not available in JIPS cases. Those referrals were to Applied Behavioral Analytic Services, an autism specific

service for individuals of all ages; and Disability Rights of Wisconsin, for exploration of a service animal or animal therapy.

¶54    The State's reply brief does not address these contentions. Therefore, the State has not refuted these assertions and is deemed to have conceded them. *See **United Co-op. v. Frontier FS Co-op.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).

## CONCLUSION

¶55    Based on the foregoing, we conclude that the trial court properly issued the dispositional order.

*By the Court.*—Order affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)(4).