IN RE the MARRIAGE OF: Roberta K. LONG, Petitioner-Respondent,

v.

Russell S. LONG, Respondent-Appellant.

Court of Appeals

*No. 94–2533–FT. Submitted on briefs February 20, 1995.—Decided August 1, 1995.*

(Also reported in 539 N.W.2d 462.)

692

For the respondent-appellant the cause was submitted on the briefs of *Russell S. Long* of Milwaukee.

For the petitioner-respondent the cause was submitted on the briefs of *Richard E. Reilly* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Russell S. Long appeals from the property division in a judgment of divorce. He raises two issues on appeal: (1) Did the trial court erroneously include in the property division certain of his income spent prior to completion of the divorce?; and, (2) Did the trial court err when it valued two checking accounts on a date other than the date of divorce? Pursuant to this court's order dated October 20, 1994, this case was submitted to the court on the expedited appeals calendar. We reverse on the first issue, and affirm on the second.

Russell and Roberta Long married in 1985. After Roberta filed for divorce in 1992, she and Russell entered into a stipulation governing, among other things, the use of assets during the pendency of the divorce. The stipulation provided that they would separate on March 15, 1992. They agreed that Russell was "to be awarded use" of a Bank One checking account, and Roberta was "to be awarded use" of a Valley Bank checking account. It is undisputed that, on March 15, 1992, the day they separated, the Bank One account for Russell's use had a $20,515 balance, and the Valley Bank account for Roberta's use had a $1,199.37 balance.

In addition to regular income earned from employment in 1993, Russell received an $11,700 bonus, and consulting fees of $12,000. He also received $2,460.32 in 1992 for services performed as a bankruptcy trustee.

Over Russell's objections at trial, the trial court considered this income to be marital property subject to division.

When the divorce was granted in September 1993, the balance in the Bank One checking account, which Russell and Roberta had agreed was his to use during the pendency of the divorce, had been reduced to approximately $5,000. The Valley Bank checking account assigned to Roberta for her use was overdrawn. Rather than including in the property division the value of the accounts as of the time of the divorce, the trial court included the value of the accounts on March 15, 1992, the date of separation.

Russell contends that the trial court's inclusion of his bonus and fees in the property division, and its valuation of the accounts as of the date of separation were erroneous rulings. We address them in turn.

## INCLUSION OF BONUS AND FEES

Valuation of a marital estate lies within the sound discretion of the trial court. *Schinner v. Schinner*, 143 Wis. 2d 81, 97, 420 N.W.2d 381, 387 (Ct. App. 1988). An appellate court sustains discretionary determinations if it finds that the trial court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982).

Although valuation of an estate lies within the sound discretion of the trial court, "[w]hether an item at issue should be classified as property subject to division involves the application of a statute to a particular

set of facts." *Hubert v. Hubert*, 159 Wis. 2d 803, 811-12, 465 N.W.2d 252, 255 (Ct. App. 1990). Consequently, "[t]his court owes no deference to the trial court" on this question. *Id.* at 812, 465 N.W.2d at 255.

There is no dispute but that, at the time of the divorce, Russell had received the bonus and fees. He testified that he had deposited his regular income and the additional income from the bonus and fees in his checking account, but then disbursed those funds to pay living expenses and to defray the costs of the divorce litigation. There was no testimony to show that Russell had used the additional income to purchase tangible assets. The trial court reasoned that the additional income should be included as part of the property division because it was equitable to do so. It stated that the additional income "should be split because you're getting the benefit of the house and everything else."

As Russell notes, however, there is no Wisconsin law that holds a party's income to itself be property subject to division in a divorce. Property division involves the division of marital assets "as they exist at the time of the divorce." *Bussewitz v. Bussewitz*, 75 Wis. 2d 78, 82, 248 N.W.2d 417, 420 (1977). The income from the bonus and fees did not exist as an asset at the time of the divorce. Nonetheless, the trial court reasoned that Russell's additional income from the bonus and fees was subject to division.

While we recognize that the trial court was attempting to effect an equitable division of property, it could not do so by classifying as property something that was not. The equitable remedy it sought lay elsewhere. For example, rather than erroneously

696

classifying income disbursed as an asset, the trial court could have considered the bonus and fees when it examined the disparity in actual income or earning capacity between Russell and Roberta when it divided the marital estate, *see* § 767.255(3)(d) & (g), STATS., or in determining whether maintenance was appropriate, *see* § 767.26(5) & (6), STATS.[1] It could have also varied from the presumption of equal property division set forth in § 767.255(3), STATS., based on Russell's past and future income. To include income earned by Russell but not converted to tangible assets or other property in the property division, however, was error. The bonus and fees were like Russell's regular income, not divisible as property, but to be considered in determining a fair division of property or maintenance. The trial court's remedy was not, however, to declare a non-existent asset to be marital property and then to divide it between the parties.[2]

---

[1] Section 767.255(3)(d) & (g), STATS., provide that a court may depart from the presumption of equal property division after considering a party's contribution to the marriage, and each party's earning capacity, among other factors. Section 767.26(5), STATS., allows the court to consider each party's earning capacity when deciding whether to set maintenance. Section 767.26(6), STATS., permits the trial court to consider the feasibility that a party seeking maintenance "can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage . . . ."

[2] We should briefly comment on Roberta's contention that all income earned during a marriage is marital property, and that income is defined to include "wages, salaries, commissions, bonuses, gratuities, . . . [or] deferred employment benefits." Section 766.01(10), STATS. While we agree with Roberta that, under this definition, Russell's additional income was "marital property" within the meaning of chapter 766, we disagree with her that a conclusion that income is a marital asset subject to

697

## VALUATION OF CHECKING ACCOUNTS

"The marital estate is usually valued as of the date of the divorce." *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 851, 454 N.W.2d 55, 60 (Ct. App. 1990). "However, when conditions over which a party has little or no control arise, such special circumstances can warrant deviation from the rule." *Id.*

The exercise of discretion suggests a "reasoned application of the appropriate legal standard to the relevant facts in the case," *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982). The trial court never specifically stated that special circumstances existed to warrant valuation of the checking accounts as of the separation date, however, and Russell suggests that the trial court thereby erroneously exercised its discretion. If, however, a trial court fails to adequately set forth its reasoning in reaching a discretionary decision, this court will search the record for reasons to sustain that decision. *Loomans v. Milwaukee Mut. Ins. Co.*, 38 Wis. 2d 656, 662, 158 N.W.2d 318,

division under § 767.255, STATS., is mandated. As this court has noted:

> [A]pplying "marital property" terminology from chapter 766 to [§] 767.255 divorce actions is not merely technically incorrect: it confuses chapter 766 property rules and policies with divorce rules and policies set forth in [§] 767.255. . . . Wisconsin's adoption of a marital property system does not mandate application of chapter 766 rules to issues relating to division of spousal property at divorce.

*Kuhlman v. Kuhlman*, 146 Wis. 2d 588, 593, 432 N.W.2d 295, 297 (Ct. App. 1988) (quoting June M. Weisberger, *The Marital Property Act Does Not Change Wisconsin's Divorce Law*, WIS. BAR BULL., May 1987, at 14, 14).

320 (1968). Our review of the record satisfies us that the trial court, by its comments on the depletion of the accounts, appropriately applied the "special circumstances" test.

The trial court concluded that March 15, 1992, eighteen months before the divorce was finalized, was a "meaningful date" for valuing Russell's and Roberta's checking accounts because that was the date they established separate households. It noted that the separation date was significant because the court could look at the parties' behavior after that date "to ascertain how [they] conducted themselves with regard to carrying out their marital relationship and the disposition of the marital estate including all marital assets, property and income." The trial court noted that it would not find that Russell wasted assets during the pendency of the divorce. It noted, however, that Russell had been earning $80,000 per year, approximately $30,000 more per year than Roberta. It noted that Russell had apparently spent all his income earned during the divorce, including the bonus and fees, and had also drawn down the Bank One checking account by $15,000. It is clear from the record that the trial court's decision to value the accounts as of March 15, 1992, was influenced by what it viewed as Russell's unwillingness or inability to curb his spending during the divorce. Russell's use of the account was, by the parties' agreement, a matter outside of Roberta's control. We are satisfied that there is sufficient information in the record to conclude that the trial court applied the "special circumstances" exception to the rule of valuation of property as of the date of divorce. We are also satisfied that the record supports the trial court's decision to

require Russell to account for the dissipation of the account.[3]

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded.

FINE, J. (*concurring in part; dissenting in part*). Although I agree with the majority's resolution of the first issue, I dissent on the second.

Absent "special circumstances" a marital estate is valued as of the date of the divorce. *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 851–852, 454 N.W.2d 55, 60 (Ct. App. 1990). The trial court did not find that there were "special circumstances." Yet, in upholding the trial court's decision valuing the parties' respective bank accounts as of the parties' separation date rather than their divorce date, the majority opines that the trial court applied the "special circumstances" test nevertheless. Majority op. at 699. I respectfully disagree. First, the parties agreed *via* a formal stipulation that each of them would be able to "use" their respective accounts. Thus, the parties intended that each of them would be able to take money from their respective accounts and spend it. Accordingly, the fact that money was taken from each of the accounts cannot constitute "special circumstances." Second, the trial court did not find that Mr. Long had intentionally depleted his

---

[3] To the extent that Russell relies on the stipulation awarding him "use" of the Bank One account during divorce proceedings for his position, we note that the trial court specifically indicated that the stipulation only provided each party *the use* of the accounts. It indicated that it did not take that language to mean that Russell and Roberta could not each be held accountable to the other for the depletion of the accounts. We agree.

account beyond his legitimate needs. In my view, the trial court ignored applicable precedent in selecting a valuation date other than the date of divorce. I would reverse on the second issue as well as the first.