# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 29, 2023

Samuel A. Christensen
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1771**

Cir. Ct. No. **2017FA735**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

LISA J. GILL,

PETITIONER-RESPONDENT,

V.

JAMES B. GILL,

RESPONDENT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: CARRIE A. SCHNEIDER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.[1]   James Gill appeals a judgment of divorce and an order denying his motion to reconsider issues regarding the parties' property division.[2]   Gill argues that the circuit court erroneously exercised its discretion by assigning less than half of his business's tax liabilities to his ex-wife, Lisa Bahr (formerly known as Lisa Gill).   He also argues that the court erroneously denied his motion to reopen the evidence after the divorce was granted to consider how the COVID-19 pandemic affected the value of his business.   Finally, Gill argues that the court erroneously awarded Bahr $15,000 in attorney fees.   We reject his arguments and affirm.

## BACKGROUND

¶2     Gill and Bahr married in June 2011.   At that time, Gill was fifty-eight years old and the sole owner of a hair salon business, Salon Aura, which had three locations and carried a significant amount of debt and negative equity.   Bahr, on the other hand, was a forty-five-year-old school teacher.   Throughout the parties' marriage, Salon Aura was profitable and increased in value.   Bahr, however, did not participate in the management or operations of the business.   Despite Salon Aura's success, the parties nonetheless "liv[ed] way outside of [their] means," as Gill conceded in his testimony.

¶3     As a sole proprietor, Gill reported all of Salon Aura's income as pass-through income on his tax returns.   Gill's income largely consisted of "owner draws," which were direct payments from Salon Aura toward his personal

---

[1]  Neither party in this appeal is related to the Honorable Gregory B. Gill, Jr.

[2]  While Gill purports to separately challenge the circuit court's denial of his motion to reconsider, he does not develop in his appellate briefs an independent argument in that regard.

expenses. Instead of making quarterly tax payments to avoid penalties and interest, Gill paid his taxes at the end of each tax year. An accountant prepared the parties' taxes, which both parties signed. Eventually, the Wisconsin Department of Revenue audited the parties' joint income tax returns for the 2014-2016 tax years. As a result of that audit, certain claimed business deductions from the parties' taxable income were disallowed, such that Gill and Bahr incurred additional tax liabilities.

¶4      In October 2017, Bahr filed a petition for divorce. The parties' tax issues, however, did not end. One month after Bahr filed for divorce, the parties took out a second mortgage on their marital residence to pay their 2016 income taxes. Gill also later obtained a second mortgage on a cottage he brought into the marriage to pay his 2017 and 2018 income taxes. Bahr, on the other hand, filed individual tax returns beginning with the 2017 tax year. As the divorce proceedings progressed, the value of Salon Aura became a central issue, and each party hired an expert witness to complete a valuation of the business.[3]

¶5      The circuit court held a three-day trial, at which the parties, their expert witnesses, and a certified public accountant who assisted with the parties' taxes testified. On January 10, 2020, the court granted the parties a divorce but withheld a decision on property division, allowing the parties to brief the issue. Before the parties submitted their briefs, the COVID-19 pandemic began, and Salon Aura closed for approximately two months pursuant to a government order.

_____

[3] Numerous files in this case were sealed in order to protect confidential information related to Salon Aura and its value. Accordingly, we do not discuss the precise valuations of Salon Aura in this opinion. For reference, however, Bahr's expert provided a significantly higher valuation than Gill's expert. The circuit court found that Salon Aura's value was somewhere in between those two valuations but closer to the valuation provided by Gill's expert.

Shortly thereafter, Gill filed a motion to reopen the evidence, seeking to show that the pandemic had negatively affected the value of Salon Aura. The court denied that motion. Several weeks later, Gill renewed his motion to reopen the evidence, and the court denied that motion as well.

¶6 In mid-May 2020, the parties submitted their written arguments on property division to the circuit court. Among other things, Bahr argued that Gill "should be [held] solely responsible for all taxes and loans [used] to pay taxes resulting from his business income." In support, Bahr emphasized her lack of involvement and decision making in Salon Aura. Bahr also argued that Gill should be required to pay a portion of her attorney fees because of the parties' income disparity and because Gill engaged in overtrial.

¶7 In late June 2021, the circuit court issued a written decision dividing the parties' property, assets and liabilities. Among other things, Gill received the marital residence, the cottage he brought into the marriage, his two personal vehicles, Salon Aura, and all of the debts and liabilities associated with those items. On the other hand, Bahr received, among other things, the residence that she purchased after filing for divorce, along with her personal vehicle and employer-based retirement account. In reaching its final property division, the court categorized a fair amount of property and equity as premarital property and awarded it to the respective party. Ultimately, based on the disparity in assets between Gill and Bahr, the court ordered that Gill make an equalization payment to Bahr. In determining that payment amount, the court considered the value of Salon Aura that it had found after considering the parties' respective expert valuations of the business.

¶8      The circuit court also held a hearing during which it elaborated on its decision and allowed the parties to address any potential errors. The court noted that—for purposes of calculating the equalization payment—Bahr would be held responsible for only one-third of the outstanding debt related to Salon Aura's taxes between 2014 and 2017, fifteen percent of the debt related to Salon Aura's 2018 taxes, and nothing beyond Salon Aura's 2018 taxes. The court acknowledged that Bahr received a benefit from Salon Aura's income, but it concluded that Bahr should not be equally responsible for the tax debts because she was not involved in Salon Aura's day-to-day operations. To effectuate the court's tax decision, the court divided two-thirds of the 2014-2017 tax debt between the parties, and it assigned the remaining one-third to Gill without credit for the debt in the property division. The court also ordered Gill to contribute $15,000 toward Bahr's attorney fees, noting that some of the extra work in the case—namely, numerous adjustments to provided balance sheets, accountings and tax liability numbers—was, "in [the c]ourt's opinion, … completely in Mr. Gill's control and led to some additional expenses."

¶9      Following the hearing, the circuit court issued a final, amended decision. Pursuant to that decision, Gill was required to pay Bahr $356,180, which represented Gill's equalization payment, payment for Bahr's premarital equity in the marital residence, and $15,000 for attorney fees. Gill later filed a motion for reconsideration and a motion to stay equalization payments, and Bahr, in turn, filed a motion for additional contribution to her attorney fees. The court denied all of those motions.

¶10    Gill now appeals.[4]  Additional facts will be provided as necessary below.

## DISCUSSION

¶11    Gill argues that the circuit court erred in dividing the parties' property, by denying his motion to reopen evidence, and by ordering him to pay attorney fees.  We review each of these decisions for an erroneous exercise of discretion.  *See LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (the division of property is a discretionary decision); *Stivarius v. DiVall*, 121 Wis. 2d 145, 157, 358 N.W.2d 530 (1984) ("The power to reopen a case for additional testimony lies in the sound discretion of the [circuit] court."); *Johnson v. Johnson*, 199 Wis. 2d 367, 377, 545 N.W.2d 239 (Ct. App. 1996) (an award of attorney fees is a discretionary decision).

¶12    "A circuit court's discretionary decision is upheld as long as the court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'"  *LeMere*, 262 Wis. 2d 426, ¶13 (citation omitted).  If a court fails to adequately set forth its reasoning in reaching a discretionary decision, we will

---

[4] Gill asserts in his reply brief that we should disregard the statement of facts in Bahr's response brief because it is "replete with misstatements and improper argument."  Gill further suggests that we should accept his recitation of the facts "as the undisputed facts."  We agree that "[t]he fact section of a brief is no place for argument."  *See Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶4 n.2, 281 Wis. 2d 173, 696 N.W.2d 194; *see also* WIS. STAT. RULE 809.19(1)(d)-(e), (3)(a)2.  In this case, however, both parties included some argument in their recitation of the facts, and Gill received an opportunity in his reply brief to point out any inaccurate facts in Bahr's response brief.  Accordingly, we will not disregard either party's statement of facts.  We admonish counsel, however, to follow our Rules of Appellate Procedure in the future.

search the record for reasons to sustain that decision. ***Long v. Long***, 196 Wis. 2d 691, 698, 539 N.W.2d 462 (Ct. App. 1995).

## I. Property division

¶13 Gill contends that the circuit court erroneously assigned Bahr less than half of Salon Aura's tax liabilities despite assigning Bahr half of Salon Aura's total value. Gill acknowledges that the court "ordered an equal property division, with the exception that it excluded the value of real property and retirement accounts that Gill and Bahr had prior to their short marriage, and its assignment to Bahr of less than half of the joint tax liabilities." Gill nonetheless asserts that the court "gave too much weight to the tax debt that was created by the income from Gill's business and not enough weight to the marital benefit derived from [that] income."[5]

¶14 In rendering a divorce judgment, a circuit court must divide the parties' property in accordance with WIS. STAT. § 767.61. *See **McReath v. McReath***, 2011 WI 66, ¶¶23-24, 335 Wis. 2d 643, 800 N.W.2d 399. Limited types of property are excluded from property division, including property acquired

---

[5] Gill also argues that the circuit court's decision was not justified under the doctrine of marital waste. Consistent with her arguments to the circuit court, Bahr disagrees and argues that the marital waste doctrine supports the court's decision. Although the court's discussion somewhat resembles a consideration of marital waste, the court never expressly found that Gill committed marital waste. Indeed, the court's discussion of the parties' tax liabilities does not appear to focus on Gill's mismanagement and dissipation of marital assets, *see **Covelli v. Covelli***, 2006 WI App 121, ¶30, 293 Wis. 2d 707, 718 N.W.2d 260, but, rather, on his role in failing to properly account for Salon Aura's tax liabilities. Such a discussion might not fall strictly within the concept of marital waste, but it is still a permissible consideration under WIS. STAT. § 767.61(3)(d) and (m). Accordingly, we will not affirm the court's decision pursuant to the marital waste doctrine, and we will consider only Gill's argument that the court, in dividing the parties' property, "gave too much weight to the tax consequences to Bahr and too little weight to Gill's contributions to the marriage or any of the other … [factors under §] 767.61(3)." (Formatting altered.)

"[a]s a gift from a person other than the other party" and property acquired "[b]y reason of the death of another." Sec. 767.61(2). However, the court shall presume that all other property not described in § 767.61(2)(a) "is to be divided equally between the parties." Sec. 767.61(3). The court may deviate from the presumption of equal distribution upon considering the factors enumerated in § 767.61(3).

¶15 As an initial matter, due to the numerous assets and liabilities at issue in this case, it is difficult to discern whether the circuit court ordered an unequal division of property and, if so, which party benefited from that unequal division. In dividing the parties' property, the court excluded several assets and liabilities that would have otherwise been subject to division under WIS. STAT. § 767.61, including items categorized as "premarital" assets and portions of the loans used to pay taxes.

¶16 The parties agree that Gill received more premarital assets than Bahr, but they disagree as to the extent of that disparity. Bahr suggests that Gill received nearly $200,000 more than her in premarital assets, while Gill asserts that he received only $58,000 more than Bahr.[6] Similarly, the total amount of debt that was excluded from the property division in Bahr's favor is somewhat unclear. Gill calculates that he received an extra $110,722 total in debt for the 2014-2016 state taxes and the 2017 federal taxes. Gill argues that "[t]his disparity will only grow

---

[6] Although Gill criticizes Bahr's calculation as "so hopelessly flawed that it is useless to this [c]ourt," Gill appears to have made at least two errors himself. First, Gill's calculation erroneously omits $19,854.01 of premarital cash value in a life insurance policy—a policy he claimed had a negative value. Second, Gill overvalues Bahr's Charles Schwab account by relying on the account's value in June 2018, instead of on January 10, 2020—the date of divorce. *See* ***Long v. Long***, 196 Wis. 2d 691, 698, 539 N.W.2d 462 (Ct. App. 1995) ("The marital estate is usually valued as of the date of the divorce.").

with the addition of the debt for the 2014-2016 federal taxes and 2018 state and federal taxes." Indeed, Gill estimates that the 2014-2016 federal taxes alone will increase the parties' tax disparity by another $30,000—giving Bahr a total benefit of more than $140,000 (not including the 2018 taxes).

¶17 Regardless of what the ultimate distribution might have been, even if the circuit court did unequally divide the parties' property in favor of Bahr, the court provided a reasonable rationale for doing so. This conclusion is especially true as to the disputed tax-liability allocation specifically at issue in this appeal. The court noted that Bahr "might have signed tax returns or refunds, but she wasn't involved in the day-to-day operations [of Salon Aura,] nor was she directing or guiding anyone on what to do." The court also recognized, however, that "[b]oth [parties] shared in the benefits that they reaped for the number of years when no taxes were paid." The court therefore, in calculating the equalization payment, made Bahr responsible for one-third of the tax debts from the 2014-2017 tax years and fifteen percent of the tax debt from the 2018 tax year. The court stated:

> I think that's fair, given the benefit she had. I don't think she should be completely off the hook for those tax liabilities because, as I said—and at times, the mortgage for the home that we're going to divide out or the equity was increasing because of those payments—so there[ are] things that she definitely has benefited [from], and I think that's the most applicable way to assign that tax liability.

¶18 The circuit court further explained that it held Gill more responsible for the tax debts because

> Gill had control of the accounts and what the accountants were paying or not in a way that Ms. Bahr did not. Yes, she reaped the benefit of the business, but he was the one to communicate with his accountant.

9

> So … when you look back at some of those balance sheets, if they're true and accurate, there was money in those to pay the tax liabilities. Had somebody been paying them quarterly or had an accountant went, wait, we probably shouldn't write every personal expense through the business, … but now we sit years later; that money's obviously gone, converted over, and we now have these large debts.

The court also explained in its written decision that Bahr was assigned only fifteen percent of the tax liability in 2018 because "some of the funds were … used to pay against marital debts which have been divided between the parties," but she "did not receive the same benefit" as earlier years because the parties were living separately.

¶19    Gill's control in Salon Aura along with Bahr's lack of involvement—and later, her limited benefit from the funds that should have been used to pay the tax liabilities—were reasonable bases for the circuit court to diverge from the presumption of an equal property division under the particular circumstances of this case. *See* WIS. STAT. § 767.61(3)(d), (m) (requiring courts to consider "[t]he contribution of each party to the marriage" and "[s]uch other factors as the court may in each individual case determine to be relevant"). Indeed, although Gill greatly contributed to the parties' overall wealth, he failed to correctly determine his tax responsibilities and failed to allocate his Salon Aura income toward those responsibilities, which, in turn, created the extensive tax debts.[7]  Thus, the court reached a reasonable conclusion that Gill should be held

---

[7] Gill might disagree with this view of the evidence, but, based on the circuit court's comments, the court appears to have found that Gill could have made better financial decisions that would have allowed him to pay his taxes without having to obtain large loans. This finding is not clearly erroneous. *See* WIS. STAT. § 805.17(2). Gill admitted that he had enough "cash flow" to pay the taxes in 2016 and 2017, but he "made the choice to pay other things" and "spen[t] out of control."

more responsible for the tax debts because he was more responsible for causing that debt.

¶20 Gill's arguments to the contrary are misplaced. The circuit court was not required to excuse Gill's behavior in creating large amounts of debt related to his business's tax liabilities simply because those debts resulted from the income that he contributed to the marriage. To be sure, Bahr benefited from that income, and the court considered that benefit and relied upon it when denying Bahr's request that Gill be solely responsible for the tax liabilities. Nonetheless, the court concluded that Bahr should not be held as responsible for the major tax liabilities that were largely outside of her control.

¶21 Finally, Gill argues that the circuit court's division of the marital estate is inequitable and not in accordance with WIS. STAT. § 767.61(3). In support, Gill contends that many of the factors in § 767.61(3) "weighed heavily in [his] favor." However, we do not accept Gill's invitation to reweigh the factors in § 767.61(3), especially given how the allocation of tax liabilities in the case was only one of many significant property division determinations that cumulatively affected the net marital estate award to each party. The court reached reasonable conclusions under the circumstances, and it therefore did not erroneously exercise its discretion.

## II. Request to reopen the evidence

¶22 Gill next argues that the circuit court erroneously denied his motion to reopen the evidence to consider how the COVID-19 pandemic affected Salon Aura's value. Gill acknowledges that assets are generally valued on the date

of divorce, but he nonetheless contends that "special circumstances" warranted deviating from this general rule.[8]  He points out that Salon Aura closed for approximately two months in response to a government-ordered shutdown, which affected his ability to pay monthly expenses, to generate profits, and to retain staff.

¶23     Generally, "[t]he marital estate is … valued as of the date of the divorce."  *See **Long***, 196 Wis. 2d at 698 (citation omitted).  A circuit court may, however, deviate from this general rule due to "[s]pecial circumstances." ***Preiss v. Preiss***, 2000 WI App 185, ¶20, 238 Wis. 2d 368, 617 N.W.2d 514.  "A circuit court considers what constitutes special circumstances … on a case-by-case basis." ***Franke v. Franke***, 2004 WI 8, ¶64, 268 Wis. 2d 360, 674 N.W.2d 832.

¶24     Here, the circuit court denied Gill's motions to reopen the evidence, concluding that "it would decide the matters upon the information that had previously been submitted."  In a later hearing, when confronted with new facts regarding Salon Aura, the court again refused to consider those new facts, noting that "[t]here has to be some finality for all the parties in this."

¶25     The circuit court's reliance on finality was rational.  The divorce action had been pending for approximately two and one-half years before Gill first requested the opportunity to submit additional evidence.  Although the last day of

---

[8] Gill argues for the first time in his reply brief that all of the "factors" discussed in ***Stivarius v. DiVall***, 121 Wis. 2d 145, 358 N.W.2d 530 (1984), weighed in favor of reopening the evidence.  However, we need not consider this argument because it was raised for the first time in a reply brief.  *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).  In any event, we note that the "factors" discussed in ***Stivarius*** were merely the circumstances present in that case supporting our supreme court's belief that "a sounder exercise of judgment" would have been for the circuit court in that case to have reopened the hearing for additional evidence. ***Stivarius***, 121 Wis. 2d at 157.  Significantly, the court *did not* "hold that the circuit court [erroneously exercised] its discretion in not reopening the hearing." ***Id.***

trial had finished only a few months prior, the court had already heard evidence on three separate days. Furthermore, as Gill recognizes in his briefing, he spent in excess of $25,000 for his expert's original valuation of Salon Aura. The parties would therefore incur additional—presumably significant—expenses if the evidence were reopened. Based on all of these facts, the court could reasonably conclude that no more time or money should be expended on evidentiary proceedings.

¶26 Gill argues that "finality does not override the need for a court to be fair and accurate." Perhaps, from Gill's perspective, the circuit court's decision was not "fair," but reasonable judges could disagree. The court granted the divorce over two months before the COVID-19 pandemic government shutdown. The court could therefore reasonably determine that Bahr should not have to bear any decrease in Salon Aura's value after the divorce and that she should not have to expend additional money to respond to Gill's new evidence. This rationale is consistent with the general rule that assets are valued as of the date of divorce. *See **Long***, 196 Wis. 2d at 698. Furthermore, the court could also reasonably determine that its valuation was accurate as of the date of divorce.

¶27 Finally, as Gill recognized in his motion to reopen the evidence, the COVID-19 pandemic presented "extraordinary circumstances." At the time Gill sought to reopen the evidence, it was largely unknown how businesses would be affected and for how long. Salon Aura might not have been able to generate profit from customers or retain its entire staff, but it also received loans from the Small Business Administration—at least some of which, Gill concedes, have now been forgiven, and it likely saved some expenses due to the closure. Given this uncertainty and other circumstances, the circuit court could reasonably conclude that it should not accept new valuations.

¶28 In short, the circuit court did not erroneously exercise its discretion by denying Gill's motions to reopen the evidence.

## III. Attorney fees

¶29 Gill last argues that the circuit court erroneously exercised its discretion by ordering him to pay $15,000 toward Bahr's attorney fees. He contends that the court's order was not justified under WIS. STAT. § 767.241(1)(a) or on the basis of overtrial.[9] Specifically, Gill asserts that the court did not make any of the necessary findings under § 767.241(1)(a) and that even if the court had made those findings, the record would not support them.

¶30 In a divorce action, a circuit court can order a party to contribute to the other party's attorney fees under WIS. STAT. § 767.241. *Wagner v. Sobczak*, 2011 WI App 159, ¶11, 338 Wis. 2d 92, 808 N.W.2d 167. Generally, when ordering attorney fees under § 767.241(1)(a), a circuit court must make three findings: "(1) the spouse receiving the award needs the contribution; (2) the spouse ordered to pay has the ability to do so; and (3) the total fee is reasonable." *Ably v. Ably*, 155 Wis. 2d 286, 293, 455 N.W.2d 632 (Ct. App. 1990); *see also Wagner*, 338 Wis. 2d 92, ¶13.

---

[9] Although the circuit court noted that certain things within Gill's control might have "led to some additional expenses," the court never found that Gill engaged in overtrial. Nor does the stated basis necessarily imply overtrial per se. Indeed, the court explained in a later decision that its "previous award of attorney fees to Ms. Bahr was based on the parties' comparative abilities to pay attorney fees[; it was] not imposed as a sanction." An award of attorney fees on the basis of overtrial is a sanction. *See Zhang v. Yu*, 2001 WI App 267, ¶13, 248 Wis. 2d 913, 637 N.W.2d 754 ("A circuit court may sanction a party who has engaged in overtrial by ordering that party to pay the opposing party's attorney fees."). Accordingly, we will consider only whether the court erroneously ordered attorney fees under WIS. STAT. § 767.241(1)(a).

¶31   In this case, the circuit court never made the necessary findings of fact under Wis. Stat. § 767.241(1)(a).   Where a court has failed to make the necessary findings, "we assume the court implicitly made those findings …, and we accept those implicit findings if they are supported by the record." *Town of Avon v. Oliver*, 2002 WI App 97, ¶23, 253 Wis. 2d 647, 644 N.W.2d 260.

¶32   Here, the necessary findings are supported by the record.  The circuit court could reasonably find that Bahr needed a contribution to her attorney fees because most of her postdivorce assets (i.e., her retirement account, residence, car, and personal property) lacked liquidity and were necessary to her overall financial well-being.  In addition, on the last day of trial, Bahr had an outstanding balance of $26,483.09 in attorney fees, which undoubtedly increased with additional legal work that her attorney performed after trial.  At the same time, however, Bahr had only about $15,000 left in a Charles Schwab account.  The court could therefore determine that Bahr needed a contribution to avoid completely depleting her liquid assets.

¶33   Gill argues that Bahr did not need a contribution because she was about to receive over $300,000 in equalization payments.  Gill fails to recognize, however, that his equalization payments would be due over a period of time, and, indeed, the court ordered that Gill pay only $30,000 within forty-five days of the court's oral decision.  Furthermore, as Bahr points out, the court could reasonably determine that she should not have to deplete her share of the marital estate to pay all of her attorney fees.

¶34   The record also supports a finding that Gill had the ability to contribute $15,000 toward Bahr's attorney fees based on his historically high income and postdivorce assets.  In fact, Gill had recent annual earnings in which

15

his income exceeded $300,000 per year. Furthermore, as Gill concedes in his reply brief, he had at least $306,686.74 in "premarital" assets that he received in the property division. The circuit court expressly anticipated that Gill would—and should—sell off some of his "unnecessary, unneeded items" and "toys."

¶35 Gill contends that he did not have an ability to pay Bahr's attorney fees because he already needed to refinance some of his assets to afford the equalization payments. He further suggests that "even in his high-income years, he often did not generate enough income to cover all of his business and personal expenses." Although Gill views these challenges as insurmountable, the circuit court did not. Indeed, the court found that Gill had the ability to better manage his money, and it expected Gill to rein in his spending on unnecessary items. The court also recognized that Gill does not "care if [he] carr[ies] a lot of debt" and that he has "paid so much [debt] off." Accordingly, even if there were facts to support Gill's argument that he could not pay the attorney fees, the court did not view the facts in that light, and there is sufficient evidence in the record to support a finding that Gill had the ability to pay the contribution.

¶36 Finally, Gill does not argue that Bahr's total attorney fees or the ordered amount of contribution were unreasonable. Nevertheless, we note that the record contained sufficient evidence to find that Bahr's total attorney fees were reasonable because her total fees on the last day of trial ($45,592.09) were roughly $8,000 less than Gill's total fees at roughly the same time ($53,558.93). Likewise, the circuit court could reasonably find that an award of $15,000 was a proper balance between Bahr's need for contribution and Gill's ability to pay because that

amount would cover the gap that Bahr needed to pay her attorney fees while also preserving a small amount of her liquid assets.[10]

¶37 In sum, we conclude that the circuit court did not erroneously exercise its discretion by ordering Gill to pay $15,000 in contribution toward Bahr's attorney fees.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[10] Although Gill questions the circuit court's method for choosing the $15,000 amount in his argument regarding overtrial, he did not renew that argument regarding WIS. STAT. § 767.241(1)(a). To the extent he intended to raise that argument again, we reject it because § 767.241(1)(a) does not require a court to tie the amount of contribution to specific attorney fees.