COURT OF APPEALS
DECISION
DATED AND FILED

April 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP700**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023FA102

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

CHASE HESS COLLETTI,

PETITIONER-RESPONDENT,

V.

MICHELLE LAURA COLLETTI,

RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In this appeal from a divorce judgment, Michelle Colletti challenges part of the circuit court's property division. She specifically argues that the court improperly rejected her request to include, in the property division, money that Chase Colletti held in a checking account before he spent it on family expenses while the divorce action was pending in the circuit court.[1] Chase was obligated to pay these family expenses under court orders that bound the parties while the action was pending. The record reflects that the court exercised its discretion by explicitly deciding that Chase's distribution of money from the checking account left nothing for the court to divide by the date of the divorce. The record also reflects that the court implicitly decided that the general rule should apply here that divisible property is valued and divided as of the date of the divorce. We conclude that Michelle fails to show that the court erroneously exercised its discretion. Accordingly, we affirm.

## BACKGROUND

¶2 Michelle and Chase were married in 2007. Chase petitioned for divorce in January 2023. In January 2025, the circuit court entered the judgment of divorce, effective February 9, 2024, which contains the property division that Michelle partially challenges on appeal. The parties were both represented by counsel throughout the proceedings.

¶3 While the divorce action was pending in the circuit court, the parties stipulated to the entry of a temporary order in March 2023 that addressed multiple issues, including financial responsibilities of the parties during the pendency of the

---

[1] We generally use the parties' first names because they share a surname.

divorce action. Chase was assigned responsibility for paying: all expenses related to the jointly owned residential property (mortgage, utilities, insurance); the family phone plan; and expenses for the children's private schools, hockey, and summer activities; Chase's own living expenses; and $3,500 per month as support for Michelle and the children.

¶4     The March order was followed by an amended stipulated temporary order in May 2023. This order included a requirement that, beginning on June 1, 2023, Chase would provide Michelle with a "housing stipend" of $3,000 per month, as well as $2,000 per month that was in lieu of the $3,500 per month payments established under the March 2023 temporary order. Chase was also obligated to cover such costs as all fees owed to the guardian ad litem and the accountants' fees for preparing returns for the parties' 2022 taxes.[2]

¶5     At a two-day trial before the circuit court in February 2024, the court took evidence on issues that included property division.[3]

¶6     In a pretrial submission to the circuit court, Chase identified a checking account with a financial services firm that Chase maintained during the marriage and throughout the divorce proceedings ("the checking account"), and Chase gave relevant testimony at trial about the checking account. The checking account was held in Chase's name alone. But it is undisputed that, as Chase

---

[2] A third amended stipulated temporary order, entered in September 2023, appears to be immaterial to any issue on appeal.

[3] The other subjects of the trial were child support, maintenance, and contributions to attorney's fees. The parties have four children, who were all still minors when the judgment of divorce was entered, and the circuit court accepted stipulations of the parties resolving all issues on custody and placement.

testified at trial, it was used as the "working family account," which he used to pay family expenses. There was evidence at trial that, during the period between February to May 2023, while the action was pending in the circuit court, Chase transferred $231,954 into the checking account from other accounts he solely controlled.

¶7     Separately, Chase testified at trial that he was the beneficiary of a life insurance policy on his father's life that was purchased when Chase was a child. There was evidence that Chase surrendered the policy and received $78,428 as net proceeds in October 2023, during the pendency of the divorce action. Chase also indicated that he deposited this $78,428 into the checking account while this divorce action was pending in the circuit court.

¶8     Following the trial, in June 2024, the circuit court issued a written decision addressing pending issues, including property division. The court adopted Chase's property division worksheet in large part, stating that Chase's worksheet made "the most sense in light of the testimony." The court determined the value of numerous assets as part of its decision, but no valuation was listed for the checking account in the court's decision.

¶9     In the section of the June 2024 decision that addressed property division, the circuit court applied WIS. STAT. § 767.61 (2023-24), which governs property division in divorces.[4] Applying the relevant factors in § 767.61(3), the court determined that there was no reason for the court to deviate from an even split of divisible property. *See* § 767.61(3) (courts are to presume that all divisible

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

property "is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering" 12 specified factors and other factors that the court deems relevant). Michelle does not challenge the even-split aspect of the court's property division decision on appeal.

¶10 The June 2024 decision required Chase to pay Michelle $2,938 a month for child support, in addition to $2,500 per month in maintenance. The circuit court also ordered Chase to pay Michelle $25,000 by August 15, 2024, to help cover her attorney fees.

¶11 The circuit court set aside the topic of the distribution of proceeds from the pending sale of real estate jointly owned by the parties, to await the outcome of the sale. Chase took the position that, without considering the anticipated even split of the real estate proceeds, based on his property division worksheet accepted by the court, Chase would owe Michelle a property division payment of $11,727.

¶12 On July 10, 2024, the day before the scheduled hearing on the outstanding issue of the division of the real estate sale proceeds, Michelle submitted a letter to the court that is at the center of this appeal. Michelle wrote that the court, in its June 2024 decision, should have identified additional property as property that is subject to division. Specifically, Michelle argued, the following property should have been equally divided between the parties: (1) the $231,954 that had been in the checking account as of May 2023, before Chase used that money to pay family expenses pursuant to the temporary orders; and (2) the $78,428 surrender value of the insurance policy, which Chase had also deposited into the checking account. Michelle suggested that this was necessary because

5

Chase had failed to show that the court should not treat both of these sums of money as property subject to division.

¶13 At the hearing, Chase argued that the circuit court should reject Michelle's request because the evidence showed that Chase had drawn down all of this money in the checking account for the benefit of the family pursuant to the March and May 2023 stipulated temporary orders. Chase asserted that his payments out of the checking account had "totaled over $250,000[,] before we even consider food, clothing, and attorney's fees."

¶14 Michelle argued that the family expenses that Chase paid out of the checking account pursuant to the temporary orders should not be treated in the property division as "a credit" in Chase's favor and against Michelle. If the circuit court ruled otherwise, Michelle contended, whichever spouse in a pending divorce has more resources than the other spouse would have an improper incentive to "deplete their resources to pay support," leaving "no property to divide at the end." Further, Michelle argued, Chase had been "ordered to seek work during the course of this action," and "he did not do so." Therefore, she contended, the payments that he was required to make under the temporary orders should have come from his wages and not the checking account. On this last point, Chase countered that the parties had stipulated that his annual earning capacity was about $60,000, which would not have been sufficient to cover the expenses assigned to Chase in the temporary orders.

¶15 In an oral ruling, which was later reduced to a written order, the circuit court treated Michelle's request as a motion for reconsideration of the court's June 2024 decision, and the court denied the motion essentially for the reason argued by Chase. The court said that it had "already indicated" in its June

2024 decision that the funds that had passed through the checking account "would not be considered for property division," because Chase had used that money to pay "expenses for the family" "during the course of this action," and there was "no way" that the family's expenses were covered unless the money came out of the checking account.

¶16    The circuit court proceeded to resolve all other remaining property division issues.  The court accepted Chase's position that, based on the trial evidence and before considering the real estate sale proceeds, Chase owed Michelle a property division payment of $11,727.  Factoring in the real estate sales proceeds, which totaled $870,444.02, plus the $25,000 in attorney fees going from Chase to Michelle, the court determined that Chase is entitled to $398,495.01 and Michelle to $471,949.01.  A judgment of divorce was granted in January 2025, stating that the effective date of the divorce would be February 9, 2024, which was when the trial had been held.  Michelle appeals.

## DISCUSSION

¶17    Michelle argues that the circuit court erroneously exercised its discretion when it rejected her request to include the following among the assets to be divided between the parties: the $231,954 that had been in the checking account as of May 2023 and the $78,428 cash value of the insurance policy that Chase deposited into the checking account and spent while this action was pending.  We conclude that, in rejecting Michelle's request, the court properly exercised its discretion by reasonably applying the relevant law to facts found in the record.

¶18    Circuit courts "shall divide the property of the parties" in divorce actions.  WIS. STAT. § 767.61(1).  As referenced above, courts are authorized to deviate from a presumed equal division after considering a range of statutory

7

factors set forth in § 767.61(3). As stated, here Michelle does not challenge the circuit court's decision in favor of an equal division.

¶19 A circuit court's decision regarding how to divide divisible property is discretionary. ***Derr v. Derr***, 2005 WI App 63, ¶9, 280 Wis. 2d 681, 696 N.W.2d 170. We will uphold the decision if the court "'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" ***LeMere v. LeMere***, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (quoted source omitted).

¶20 Although it is not always clear from the appellate briefing, a key element of the dispute on appeal is what date the circuit court should have selected for the disclosure and valuation of assets subject to property division. Our supreme court has explained that the statutory provisions in WIS. STAT. § 767.127, which govern disclosure and valuation of assets, have been interpreted to establish that the property of divorcing parties is usually "'valued and divided as of the date of the divorce,'" unless there are "'special circumstances.'" ***Franke v. Franke***, 2004 WI 8, ¶¶1 n.1, 61, 268 Wis. 2d 360, 674 N.W.2d 832 (quoted source omitted) (discussing statute under prior numbering, WIS. STAT. § 767.27 (2001-02)). Whether special circumstances exist depends on the particular facts of each individual case. ***Id.***, ¶64; *see also* ***Preiss v. Preiss***, 2000 WI App 185, ¶21, 238 Wis. 2d 368, 617 N.W.2d 514 (reviewing for an erroneous exercise of discretion, circuit court ruling that there were "special circumstances").

¶21 One illustrative case is ***Long v. Long***, 196 Wis. 2d 691, 539 N.W.2d 462 (Ct. App. 1995). There, this court stated that the record supported a determination that special circumstances justified using the date on which the parties separated—18 months before the divorce judgment was entered—because

the parties definitively established separate households when they separated and because, after that, the husband had been unwilling or unable "to curb his spending" while the divorce action was pending. *Id.* at 699-700. That is, the husband significantly depleted a checking account between the separation and the final divorce in a manner that fell outside the wife's control. *Id.*

¶22 Here, the circuit court used a two-part rationale in rejecting Michelle's request.

¶23 First, the circuit court essentially ruled that Chase distributed money from the checking account for the benefit of the family, consistent with the temporary orders and the June 2024 decision of the court, and that this left nothing for the court to divide as of the effective date of divorce, February 9, 2024, as established in the January 2025 judgment.

¶24 The second part of the circuit court's rationale was implicit. The implicit determination was that the court should apply the default timing rule for valuation and division—the date of the divorce—because there were not special circumstances. That is, the court was able to rely on the trial evidence concerning what the values of divisible assets were as of the date of the divorce, February 9, 2024. Further, the court saw no reason to think that events outside of Michelle's control caused special circumstances calling for the court to use a date other than the date of divorce for valuation and division.

¶25 Based on the nature of Michelle's request to the circuit court and the court's reasonable rejection of it, we affirm the court's decision.[5]

¶26 Michelle does not develop a supported argument that the first, explicit, part of the circuit court's ruling was unsupported by facts in the record. Based on the evidence available to the court at the time of divorce—including the amount of funds in the checking account as shown at trial and the income and financial burdens of the parties—the court could reasonably infer that the checking account would be drained of any potentially divisible assets as of October 2024.

¶27 Regarding the second, implicit, part of the circuit court's rationale, although Michelle on appeal explicitly cites the special circumstances exception to the general date-of-divorce rule for property division, the argument she made to the circuit court was far from clear as to what, specifically, she was seeking to evoke. Indeed, below we explain why we conclude that she has forfeited, for purposes of appeal, an argument that the court should have found special circumstances. But, given the comments that the court did make, and its ultimate ruling, it is obvious that the court implicitly decided to apply the general timing rule and saw no reason not to apply it. *See State v. Gary M.B.*, 2004 WI 33, ¶¶22, 26, 270 Wis. 2d 62, 676 N.W.2d 475 (rejecting an argument that an appellate court cannot affirm a circuit court's discretionary decision based on record evidence showing that the circuit court implicitly made the decision without expressly stating it). The circuit court gave no suggestion that it was not aware of the

---

[5] We need not address disputes between the parties about the characterization of assets held by the parties as divisible or non-divisible property, because Michelle's arguments fail for other reasons. We also do not address Chase's arguments that Michelle's request did not qualify for relief from the circuit court's order as a motion for reconsideration or motion under WIS. STAT. § 806.07(1).

general timing rule and its potential exceptions, which are fundamental features of divorce law in Wisconsin under such precedent as *Franke*.

¶28 This brings us to what we conclude are the first of two arguments that Michelle forfeited in this appeal. Michelle now suggests that the circuit court should have recognized that there were special circumstances that required the court to rely on the values of assets as of some date or dates before the date of divorce. One problem with this argument is that it is not developed, even on appeal. For example, Michelle does not direct us to any particular evidence establishing any earlier date as the proper valuation date; indeed, it is not clear whether she contemplates one or two earlier dates for property valuation purposes. We could reject her argument on that ground alone. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments). But we conclude that it is dispositive on this issue that Michelle failed to preserve the issue in the circuit court. At no place in her July 10, 2024 letter to the court, nor at the hearing the next day, did Michelle refer to the special circumstances exception to the default date-of-valuation rule. We have already explained why we construe the court to have implicitly gone with the default date for the purposes of property valuation, but the court was not presented with a contrary argument.

¶29 As a general rule, a party forfeits an issue for purposes of appeal if the party does not preserve the issue in the circuit court. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. This rule is "not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." *Id.*, ¶11. It "promotes both efficiency and fairness, and 'go[es] to the heart of the common law tradition and the adversary system.'" *Id.* (quoted source omitted; alteration in *Huebner*). We see no reason not to apply the

general forfeiture rule here, given that Chase and the circuit court were both deprived of an opportunity to address this issue.

¶30 The second forfeiture involves Michelle's argument on appeal that Chase "liquidated" the funds in the checking account "contrary to WIS. STAT. § 767.117(1)(b)." Under § 767.117(3), a party to a divorce may ask a circuit court to hold in contempt a party who violates § 767.117(1)(b) by

> encumbering, concealing, damaging, destroying, transferring, or otherwise disposing of property owned by either or both of the parties, without the consent of the other party or an order of the court, except in the usual course of business, in order to secure necessities, or in order to pay reasonable costs and expenses of the action, including attorney fees.

¶31 Michelle makes isolated references in her appellate briefing to Chase's alleged concealment or deception related to assets, but she does not fully develop an argument that Chase violated the terms of WIS. STAT. § 767.711(1)(b), or that he otherwise engaged in concealment or deception or other improper disposition of property, or violated the two temporary orders governing the parties' conduct during the pendency of the divorce action. But again here, what is dispositive on this issue is that Michelle failed to preserve any such issue in the circuit court. At no place in her July 10, 2024 letter to the court, nor at the hearing the next day, did Michelle refer to § 767.117. More broadly, she did not refer to any related concept involving alleged concealment or deception.

¶32 The fact that Michelle failed to allege either topic—special circumstances or Chase's alleged concealment or deception—in connection with the request she filed with the circuit court disposes of the run of arguments that Michelle makes on appeal. Her remaining arguments on appeal are not substantial.

¶33 Michelle loosely relies on citations to case law, all of which are readily distinguishable from the situation here, as we now explain.[6]

¶34 Michelle cites *Haugen v. Haugen*, 117 Wis. 2d 200, 343 N.W.2d 796 (1984); *Van Wyk v. Van Wyk*, 86 Wis. 2d 100, 271 N.W.2d 860 (1978); and *Leighton v. Leighton*, 81 Wis. 2d 620, 261 N.W.2d 457 (1978), all for the proposition that circuit courts should generally avoid reducing the portion of divisible assets that would otherwise be assigned to a spouse by the amount that the spouse has received from the other spouse in court-ordered temporary support or maintenance payments while the divorce action was pending. *See Haugen*, 117 Wis. 2d at 219 & n.7; *Van Wyk*, 86 Wis. 2d at 115; *Leighton*, 81 Wis. 2d at 632. Michelle also cites *Weiss v. Weiss*, 122 Wis. 2d 688, 365 N.W.2d 608 (Ct. App. 1985), for the following variation: a spouse's portion of divisible assets should not be reduced by the amount of payments that the other spouse "gratuitously made for the benefit of adult children." *See id.* at 700. But none of this case law helps Michelle here, because the instant case did not involve a reduction of any amount from Michelle's portion of divisible funds (such as the value of the marital residence) that remained on the date of the divorce. In this case, the money that passed through the checking account had been spent for legitimate, court-ordered purposes by the time of the divorce. As explained above, Chase spent the funds at issue here pursuant to the temporary orders while the divorce action was pending.

---

[6] We say "loosely relies" in part because Michelle's counsel frequently fails to provide a pinpoint citation to identify the portion of an opinion on which Michelle relies. These omissions force opposing counsel and this high-volume court to hunt for what seem to be the pertinent passages in the cited opinions.

¶35     Michelle also calls our attention to a discussion in *LaRocque v. LaRocque*, 139 Wis. 2d 23, 406 N.W.2d 736 (1987), regarding the interplay of maintenance and property division issues.  In the pertinent passage, our supreme court specifically disapproved of a circuit court relying on the ability of one spouse to use a portion of her divisible assets to support herself while seemingly ignoring the ability of the other spouse to rely on his portion of divisible assets plus his higher income to support himself.  *See id.* at 34-35.  Michelle cites this authority in connection with her assertion that the circuit court here "offset" Chase's obligation to provide her with temporary support "against" Michelle's "final property division," which she contends "effectively" made her pay one-half of Chase's "support obligation[s] through a reduced property award."  But, as should be evident by this point in our discussion, there was no such offset.  This case does not involve a decision of the circuit court to require Michelle to invade or exhaust her portion of the assets that were divisible at the time of the divorce.

¶36     At times, Michelle asserts that the circuit court made inadequate findings to support its rejection of her request.  But Michelle fails to develop an argument that her request called for some new set of factfinding by the court, beyond the determinations that the court had already memorialized to that point in the litigation.  Her letter to the court contained a number of factual assertions, but none of these were in conflict with the evidence that, as we explain above, supports a determination that the checking account was drained by the time of the divorce.  Thus, the ruling that Michelle challenges on appeal did not require the court to question or reject any of her factual assertions.

¶37     Echoing an argument that she made in the circuit court, Michelle contends that, as a matter of public policy, affirming the court's ruling would create an incentive "for future litigants to use marital property instead of

individual income or separate property to pay for court-ordered obligations while a divorce action is pending." It is a sufficient response to this argument to point out that, in making her request to the circuit court, Michelle did not provide a basis for the court to find that Chase had been concealing or improperly disposing of income or separate property while spending down assets that would otherwise have been shared with Michelle in the property division.

## CONCLUSION

¶38    For all of these reasons, we affirm the circuit court.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.